**Stephen GRANT, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare for the United States of America, Defendant.**

Civ. A. No. 7959.

United States District Court
E. D. South Carolina,
Charleston Division.

June 12, 1964.

A. Arthur Rosenblum, Charleston, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., and Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., for defendant.

DALTON, Chief Judge.

This proceeding was brought by Stephen Grant to review the action of the Secretary of Health, Education and Welfare disallowing his claim for disability benefits under Title II of the Social Security Act, as amended. (42 U.S.C.A. § 401 et seq.) (hereinafter called the Act). The plaintiff was severely injured on January 28, 1961, while riding as a passenger in an automobile which struck a bridge in Charleston, South Carolina. He was unconscious for a period of time following the mishap, during which he was admitted to the Medical College Hospital in Charleston suffering with broken bones in his foot, leg and wrist. He was also thought to have suffered a cerebral concussion.

Stephen Grant was born July 6, 1930; therefore, he is presently only thirty-three years of age. His education consists of completion of the seventh grade. He is the father of six children and at the time of the administrative proceedings reported that his wife was expecting a seventh child. At the time of the accident he was employed as a stevedore for the Palmetto Stevedoring Company in Charleston, South Carolina. His work experience also included employment in a saw mill, construction work, lineman's helper for the power company, and operator of a felt machine in a mattress factory. He had served in the military for thirteen months in Korea.

Dr. R. H. Belser, who treated the plaintiff during his hospitalization, reported that he was suffering from a splintered fracture of the upper part of the bone which extends from the right knee to the hip; a fracture of the wrist end of the radius, a bone of the right forearm; a fracture of the first carpal bone on the thumb side in the right wrist; and fractures of several bones in the right foot. The fracture in the leg was treated by traction and by a pin through the upper end of the right tibia. Serial X-rays during the healing process showed that the general alignment of this fracture was "acceptable". The fractures of the wrist and foot were treated in short casts.

The femoral fracture showed considerable callus formation (tissue which surrounds the ends of a broken bone in the healing process) so the patient was discharged on March 23, 1961, after the application of a bandage-type cast encompassing the entire right leg. He was thereafter to be followed as an outpatient. The cast was removed two months after plaintiff was discharged from the Medical College Hospital.

Stephen Grant filed his application on September 20, 1961, to establish a period of disability and for disability insurance benefits as provided in Sections 216(i) and 223 of the Act, (42 U.S.C.A. §§ 416 (i), 423) alleging disability from the date of the accident. He reported that after the cast was removed from his right leg he continued to suffer pain in his right hip and right foot. This pain was aggravated by any weight bearing, standing or walking. He also developed some pain in his low back area at that time. In a report of contact bearing the same date as plaintiff's application, it was reported that Grant could walk for only twenty to thirty minutes and that his knee occasionally gave way with him when he tried to stand. He reported feeling bad all the time with headaches and dizzy spells and also felt that he needed eyeglasses. He was restless at night but usually slept for four hours in the after-noon. No medication was being taken, nor was he on a special diet. He was wearing a built-up shoe to compensate for the short leg. His language facilities and literacy were said to be "good", and he was able to use public transportation when needed.

In a medical report filed October 18, 1961, Dr. Belser stated that Grant was then experiencing pain and stiffness in the wrist and the foot, both caused by traumatic arthritis. There was some deformity in the foot. The right hip was healed but there was a limp with pain. He also noted that Grant had complained of headaches but no details were given concerning them. The overall condition was "static". On December 19, 1961, Dr. Belser recommended that the mid tarsal area of the foot be fused in order to control the reported symptoms of the traumatic arthritis.

The Disability Determination Division of the Bureau of Old-Age and Survivors Insurance requested that plaintiff undergo examination for musculoskeletal evaluation at government expense. This examination was conducted by Dr. B. L. Freeman, Jr., an orthopedic surgeon, the results of which were reported on December 18, 1961. Dr. Freeman stated that plaintiff complains of headaches when he worried and pains at times in the right hand. There were no complaints of pain in the hip but a limp was noticeable. Dr. Freeman noted:

"Examination reveals a tall, healthy, well developed and nourished colored male who walks with a decided short leg type limp of the right leg. Examination of the patient standing shoeless reveals a pelvic tilt, the right side being lower than the left. There is obvious atrophy of the right lower extremity as compared with the left."

Measurements indicated the variance of the right leg as follows:

| | | Right Leg | Left Leg |
|---|---|---|---|
| Length | (anterior superior iliac spine to the internal malleolus) | 39¼ inches | 41 inches |

Dr. Freeman also reported deformity and swelling in the right foot. Motion of the knee produced a marked rubbing sound behind the knee cap with substantial pain and motion of the right hip was limited. There was some loss of grip in the right hand with further limitations in motion of the first carpometacarpal joint with pain on attempted manipulation. Dr. Freeman expressed no opinion as to how these residual conditions affected the plaintiff's capacity for employment. (Tr. 63–64)

He was examined by Dr. John Siegling on February 5, 1962, who reported weakness about the hip with a gluteus limp. The right knee flexed to one hundred degrees and deformities of the right foot were noted, with pain and swelling. Dr. Siegling expressed the opinion that Grant was capable of no more than the lightest work in his condition at that time and he thought that such employment would be difficult to find. (Tr. 75)

The plaintiff was admitted to the Veterans Administration Hospital in Columbia, South Carolina, on February 8, 1962, for the purpose of performing the fusion operation on the right foot. His post operative course was uneventful and he was discharged on March 2, 1962, with the foot ailment described as, "treated, improved". He returned to the hospital in April when the cast was removed from his foot and X-rays taken, which showed an "early union of his fusion site". He was to wear a stiff-soled shoe which was reported as "probably all the support he will need". On his next visit to the Veterans Administration Hospital in May 1962, Dr. G. M. Gudmundson, an orthopedic consultant, reported Grant to be "getting along well, except for hip and knee pain". There was very little pain in the foot but he was to be seen again in June for further X-rays.

Plaintiff's application for benefits had originally been denied in January 1962. Upon reconsideration, it was again denied on May 16, 1962, after a medical consultant for the vocational rehabilitation agency of South Carolina, noting the success of the fusion operation, found that plaintiff would soon be able to return to light laboring work. (Tr. 53)

The following month the plaintiff was again seen by Dr. Gudmundson at the Veterans Hospital. At this time there were complaints of chest pain, back pain, and pain in the right wrist as well as in the foot. However, the X-ray of the foot looked "good" and it was not to be repeated on the next visit. X-ray examination of the areas involved in the other complaints were planned for July. The planned examination was conducted on July 7, 1962, and Dr. Gudmundson reported as follows:

"X-rays today look good. Patient had x-rays of the wrist and hand, x-rays of the lumbar spine and x-rays of the chest for ribs. All of these appear normal. I think that he has recovered sufficiently that he may return to light work. He is to be seen again in 6 weeks for follow-up visit." (Tr. 74)

After the claimant's application was denied upon reconsideration, a hearing was held on July 19, 1962, before a hearing examiner of the Social Security Administration. The hearing examiner found that Grant had not established impairments either singularly or in combination, which precluded him from engaging in any substantial gainful activity. This became the final decision of the Secretary of Health, Education and Welfare on November 28, 1962, when the Appeals Council denied the plaintiff's request to review the decision of the hearing examiner.

The permanent impairments which remain with the plaintiff as a result of the automobile accident involve the musculoskeletal system. Pursuant to Section 205 (a) of the Act, (42 U.S.C.A. § 405(a)) the Secretary has promulgated a regulation which aids in the evaluation of impairments involving limitations of this nature. Section 404.1511(a) of regulations of the Social Security Administration provides:

"General. In determining the effect of impairments involving the

musculoskeletal system consideration is given to the effect of the impairment on the normal movements involved in working for a living. The principal factors considered are:

"(1) Remaining capacity for weight-bearing, walking, standing, sitting, stooping, grasping, lifting, reaching, and bending;

"(2) The ability to perform gross or fine manipulative movements of arms, hands and fingers;

"(3) The existence of an underlying systemic disease with secondary loss of musculoskeletal function, as in diabetes mellitus, or obliterative atherosclerosis because these diseases are generalized and progressive;

"(4) The ability to wear and use prosthetic devices;

"(5) The ability to coordinate;

"(6) The presence of severe pain; and

"(7) Loss of strength."

(20 C.F.R. § 404.1511(a)).

Regarding plaintiff's ability to bear weight and his capacity for walking, standing and other physical functions, the most significant residual impairment involves the shortening of his right leg and the consequent pelvic tilt which causes him to walk with a limp. At the time of filing the application in September 1961, plaintiff reported that he could walk for no more than thirty minutes and that occasionally his knee gave way while standing. He was able to sit up for no longer than an hour or two. Dr. Belser reported that plaintiff complained of pain in the right hip in October 1961. Counsel for the defendant infers that subsequent to this time the pain subsided and the continuing problem dealt only with plaintiff's foot. This inference is, at best, speculative. Apparently, the defendant has failed to take into account that even if the pains in plaintiff's hip have diminished he is left with a permanent limp which must limit his capacity by making his movement slow and awkward.

In addition, his ability to perform fine manipulative movements with the right hand may be to some extent limited. There were complaints of lack of pressure in this hand in September 1961, and in October Dr. Belser reported the development of traumatic arthritis in the right wrist. In December 1961, Dr. Freeman reported the presence of some pain and limitation of motion in the right thumb accompanied by some loss of strength in the grip but there was no mention of arthritis. However, when plaintiff was treated in the Veterans Hospital in February 1962, the report of his condition at that time did not disclose the existence of that problem at all. (Tr. 72–73) There was a further complaint of pain in the wrist in June 1962. On the strength of this complaint, X-rays were taken of the hand and wrist on July 2, 1962, the results of which indicated that these areas were "normal". (Tr. 74)

There were also complaints of headaches occurring after the accident which bothered plaintiff when he worried. However, there is little medical evidence in the record which could form the basis for a conclusion that this contributed to any alleged disability. There is evidence to the effect that he suffered a concussion at the time of the accident but nothing in any of the medical reports indicates that this was a continuing problem. Plaintiff alleges the need for eyeglasses, the lack of which may well be the basis for this problem, if it exists.

Prior to the successful operation performed in the Veterans Hospital in Columbia, South Carolina, on February 15, 1962, plaintiff had suffered considerable difficulties with pain and stiffness in the right foot. It must be noted, however, that even though the surgery performed on the foot was successful, it left plaintiff with some decrease in his ability to manipulate the foot since the purpose of the surgery was to fuse a joint to control the symptoms of pain. Dr. Gudmundson expressed the opinion by July 2,

1962, that plaintiff was then ready to return to light work. (Tr. 74) Implicit in the statement by Dr. Gudmundson on that date, and consistent with the tenor of the record in this case considered as a whole, is the notion that plaintiff could expect further recovery subsequent to July 2, 1962 and thus he could expect some capacity for gainful employment. However, with a stiff foot and a short leg limp, accompanied by an imperfect functioning knee and some possible limitation in his capacity to work with his right hand, it is difficult to conclude on the basis of this record that Grant, although only thirty-three years of age, has the capacity for substantial gainful activity. This case differs from the recent Fourth Circuit case of Cuthrell v. Celebrezze, 330 F.2d 48 (4th Cir. 1964), in which the claimant was held entitled to benefits. Cuthrell, a man of sixty-three years, was left with a completely stiff right leg as a result of injuries sustained while on the job. The primary difference in these cases, however, is in the extreme variance in the ages of the claimants. In this respect the case also differs from Klimaszewski v. Flemming, 176 F.Supp. 927 (E.D.Pa.1959); and Lewis v. Flemming, 176 F.Supp. 872 (E.D.Ark.1959), both relied on by plaintiff in his brief.

■ Under the Social Security Act the claimant need not introduce evidence which negatives his capacity for every imaginable job open to men with similar impairments and of his age, experience, and education. It is quite enough if he offers evidence of what he has done, his inability for that kind of work, and his lack of experience and training for any other type job. If there are other kinds of work available to him for which he is suited, it is the Secretary's burden to go forward with the evidence regarding those types of work. Parfenuk v. Flemming, 182 F.Supp. 532 (D.C.Mass.1960); Klimaszewski v. Flemming, 176 F.Supp. 927 (E.D.Pa.1959). Here, the hearing examiner concluded that Grant should be capable of engaging in work not requiring strenuous physical exertion. He justifies this conclusion with such reasoning as the fact that plaintiff can move about without the use of crutches or a cane. (Tr. 8)

■ Under the review provisions of Section 205(g) of the Act, (42 U.S.C.A. § 405(g)) this Court is limited to a determination of whether the Secretary's findings are supported by substantial evidence. On the basis of the record, the Court may enter judgment affirming, modifying or reversing the Secretary's decision, with or without remanding the case for a rehearing. But the District Court may not conduct a hearing de novo and it may not substitute its inferences for those of the hearing examiner. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). The plaintiff has shown the existence of impairments which will permanently limit his capacity. There is no doubt that he will be unable to resume his previous work as a stevedore. The Secretary held that Grant "has not established that he has impairments, either singularly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application of September 20, 1961, was effective." (Tr. 8) If it can be implied from this that plaintiff may have been disabled at some later date the finding is clearly erroneous, for if Grant is disabled, such disability surely dates from the time of the accident.

The Court is of the opinion that on the present state of the record, there is a lack of substantial evidence to support the Secretary's finding that plaintiff is not entitled to benefits under the Act. The case will, therefore, be remanded to the Secretary with instructions to either allow plaintiff's application for a period of disability and for disability insurance benefits on the basis of the record as it now stands, or to conduct a rehearing and carefully redetermine the merits of the plaintiff's claim.

An order will be entered accordingly.