**Rufus H. WAYNE, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education, and Welfare, Defendant.**

**No. C–134–W–68.**

United States District Court,
M. D. North Carolina,
Wilkesboro Division.

Oct. 22, 1969.

John E. Hall, of McElwee & Hall, North Wilkesboro, N. C., for plaintiff.

William L. Osteen, U. S. Atty., and Richard M. Dailey, Jr., Asst. U. S. Atty., Greensboro, N. C., for defendant.

## MEMORANDUM OPINION

GORDON, District Judge.

While employed as a timber and log cutter for a sawmill on March 1, 1960, Rufus Wayne (sometimes hereinafter referred to as the "claimant") was severely injured when a tree fell upon him, crushing his rib cage on the right and smashing his right scapula. For the next twenty days he was confined to Wilkes General Hospital and treated by Dr. Fred C. Hubbard, a general surgeon. On March 27, 1960, he was taken to Baptist Hospital in Winston-Salem and there treated for traumatic pneumothorax and hydrothorax—conditions which partially collapsed his right lung—and the rib fractures.

The claimant was then fifty-two years old. He had a fifth grade education. Special skills were non-existent; he had never been employed other than as a manual laborer. Except for a period of six or seven weeks (October 1–November 20, 1960),[1] he has been continuously unemployed since the accident.

As a result of the accident, Wayne is incapable of raising his right arm away from the body to shoulder level. He complains of severe and almost constant pain in the shoulder and lower back, as if a "fifty pound" force were weighing upon him whenever he moved about. An application for Social Security Disability benefits filed October 19, 1967, was denied.

This claimant has a long history of physical deterioration. In 1944 he was diagnosed as having a peptic ulcer within the duodenal bulb. He was rejected from service with the Armed Forces. The ulcer has apparently given him occasional distress ever since.

Both his wife and a married daughter, who said that she saw her father daily, testified that he got sick a lot, frequently becoming nauseous after eating. Mrs. Wayne said that she often has to get up at night to warm milk or cook oatmeal to get his stomach "eased off." They testified that he got sick that very morning. They thought on the way to the hearing they would have to stop the car for him to get out.

Mrs. Wayne said that because of pain her husband doesn't rest much day or night and cannot stay up for very long periods at a time. "He lays down, I don't know, several hours during the day and at night when he turns over in the bed, sometimes he just yells out awful —his bones hurt so bad."

In April 1963 Wayne was found to be suffering from obstructive pulmonary emphysema. He had complained of becoming short of breath whenever he walked so far as a half block or climbed 8–10 steps. Tests run by the examining specialist were compatible with a diagnosis, according to the defendant's medical expert, of mild to moderate pulmonary emphysema. The medical expert further testified that in his opinion emphysema constituted the claimant's greatest functional impairment.

The claimant brings this action pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health, Education and Welfare denying his claim for disability benefits. On October 24, 1968,

---

[1]. During this time he was employed as a night watchman. Working 6½ hours per night, he would sit in his car and watch over a dam construction site. He and his wife testified that he had to quit because of pain in his shoulder and back. Part of the time he had paid a neighborhood boy to come in and take his place.

at the request of the Secretary, this Court remanded the case for further administrative proceedings. Subsequently claimant, his attorney, a vocational witness, and a medical expert appeared before a hearing examiner, who took further testimony. On March 18, 1969, the hearing examiner determined Wayne not disabled within the meaning of the Act. The Appeals Council rendered the "final decision" of the Secretary on April 24, 1969, and affirmed the hearing examiner.

■ A person seeking Social Security Benefits for a period of disability bears the burden of proving that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(c) (2).

"Under the Social Security Act, the claimant need not introduce evidence which negatives his capacity for every imaginable job open to men with similar impairments of his age, experience and education. It is quite enough if he offers evidence of what he has done, his inability for that kind of work, and his lack of experience and training for any other type job. If there are other kinds of work available to him for which he is suited, it is the Secretary's burden to go forward with the evidence regarding these types of work." Grant v. Celebrezze, 230 F.Supp. 595 (E.D.S.C.1964).

Carrying forward his burden, the Secretary customarily introduces a medical expert who gives an opinion based upon the medical record. He is not an examining physician.

After the medical evidence has been adduced, a vocational expert is sworn. It is his function to inform the Examiner, in answer to hypothetical questions framed according to the medical evidence, whether there are jobs available in the national economy and existing in significant numbers such as would be compatible with the claimant's physical ability.

In this case, the Examiner first asked the vocational witness whether there would be jobs available should he (the Examiner) find Wayne's health to be such as was suggested by the medical expert's interpretation of the medical record. The reply was that if such were the case, the claimant could perform certain light jobs, i. e., janitor, night watchman, parking lot attendant.

The Examiner's final question was framed in the alternative as follows:

"Suppose I find from the medical evidence that this man's impairments are severe, what would your answer be then?"

The vocational expert responded:

"My answer would be that he could not be gainfully employed in the economy."

After the claimant has tendered his evidence and the Secretary, carrying forward the burden, has offered his, the hearing examiner makes a factual determination as to whether that particular claimant should be considered disabled within the meaning of the Act.

■ 42 U.S.C. § 405(g) imposes upon this Court the duty to accept as conclusive all factual determinations made by the hearing examiner *if these conclusions are supported by substantial evidence.* Substantial evidence has been numerously defined as "evidence which a reasoning mind would accept as sufficient to support a particular fact." Hayes v. Gardner, 4 Cir., 376 F.2d 517 (1967). It is not the province of the courts to try such a case *de novo.* Nevertheless, courts must not "abdicate their traditional functions" and cannot escape the duty to study fully the record in its entirety to determine whether from the record as a whole the conclusions reached are rational and consistent with the record. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Boyd v. Folsum, 3 Cir., 257 F.2d 778 (1958); Hun-

eycutt v. Gardner, 282 F.Supp. 405 (M.D.N.C.1968).

In making his factual determination, the hearing examiner is not free to speculate, but is bound to examine the total evidence before him *according to proper legal standards*. The Fourth Circuit Court of Appeals has outlined certain criteria to be considered in measuring a particular claimant's ability to engage in substantial gainful activity. These standards are:

"(1) The objective medical facts, which are the clinical findings of treating or examining physicians divorced from their expert judgments or opinion as to the significance of those clinical findings, (2) the diagnoses, and expert medical opinions of the treating physicians on subsidiary questions of fact, (3) the subjective evidence of pain and disability testified to by claimant and corroborated by his wife and neighbors, and (4) claimant's educational background, work history, and present age." Underwood v. Ribicoff, 4 Cir., 298 F.2d 850 (1962); Hayes v. Gardner, *supra*.

In reviewing a case on appeal from the Secretary, the court finds its task twofold. First, it must scrutinize the record as a whole, looking to see if the hearing examiner did in fact apply proper legal standards in reaching his determination, i. e., did he consider each of the elements enumerated above. If he relied on one aspect of the record in disregard of another and the forgotten part cries out loudly in contradiction, his decision is erroneous. See Branham v. Gardner, 6 Cir., 383 F.2d 614 (1967); Hayes v. Gardner, *supra*. Second, if it appears that the examiner has applied proper legal standards and looked to the "four corners" of the evidence, the court must examine the record to find whether the decision was based upon substantial evidence.

If the court finds, as to the former, that erroneous legal standards have been applied, regardless of whether or not the court agrees with the ultimate decision of the Secretary, the case should be remanded for a determination upon proper standards. Whitt v. Gardner, 6 Cir., 389 F.2d 906 (1968). If, however, the court finds either a misapplication or proper application of legal standards and further finds that there is no substantial evidence upon which a ruling against the claimant can be grounded, it should strongly consider a reversal. The reversal is tantamount to directing a verdict, saying that there is here no evidence which a reasoning mind would accept as sufficient to support a contrary determination. The court is empowered to enter upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

## DISCUSSION

Although the March, 1960, accident marked the end of Wayne's status as a working man, the question before the hearing examiner was not whether physical impairment from the accident alone foreclosed his ability to engage in substantial activity as defined by the Act. The real question centered upon the state of his overall health—whether the physical disabilities resulting from the accident, compounded with physical impairments already existing, produced in combination a total disability.

Claimant's wife testified that when he was able to work no longer, she took a low paying job in a nearby hospital. She still works there and says that she will continue so long as she is physically able. Relatives have contributed in large part toward living expenses. The hearing examiner stated that the Waynes live quite badly. Their house has no indoor plumbing. Mrs. Wayne stated that they would not be living in such poor fashion if her husband were able to work.

The claimant has been examined by several physicians and specialists. In a letter dated August 11, 1960, Dr. George C. Holmes, an orthopedic surgeon, re-

ported that the patient had a limitation of motion in the right arm, but observed that the fractures had healed well. He further reported that he could not *account* for "this man's rather severe complaint of pain." The medical expert at the hearing testified that he could not explain from objective reports why the pain would exist, but that he could not say the pain did not exist.

Dr. E. C. Miller, Jr., Director of the Out-Patient Department of Baptist Hospital, reported that Wayne was seen in the Orthopedic Clinic at Baptist May 23, 1962. He said the consultant reported that Wayne should be rated as having perhaps 35 per cent disability from the injuries to his chest and shoulder area. Dr. Miller did note a tenderness to palpitation in that area. His report was to the effect that Wayne was not totally disabled from the accident alone.

Nothing indicates that either Dr. Holmes or Dr. Miller had any knowledge of claimant's ulcerated duodenum or pulmonary emphysema. Their estimates of disability must be understood as relating to residuals of the accident alone.

The Court here takes note of the fact that pain—its severity and even its existence—has often been an enigma to the medical profession.

> "If pain is real to the patient and as such results in that person's being physically unable to engage in any gainful occupations suited to his training and experience, and this results from any 'medically determinable physical or mental impairment,' the disability entitles the person to the statutory benefits even though the cause of such pain cannot be demonstrated by 'objective clinical and laboratory findings.'" Page v. Celebrezze, 5 Cir., 311 F.2d 757 (1963).

■ To paraphrase the Fifth Circuit, where there is an abnormality—whether anatomical, physiological, or psychological, and that abnormality is demonstrable by medically acceptable clinical and laboratory diagnostic techniques, the inability of a physician to outline, step by step, the mechanism by which pain is generated does not mean that the pain is neither real nor crippling. Medical science today is frequently unable to measure the existence—much less the intensity—of pain flowing from a clinically demonstrated abnormality. In the instant case there is no question of the abnormalities having been clinically demonstrated; the issue relates to their combined effect in impairing the claimant's overall health.

In a report dated September 24, 1962, Dr. George M. Eckley, a specialist of internal medicine, stated that an Upper GI Series on August 22, 1962, revealed an active duodenal bulb ulcer. He made no observation as to his patient's ability-potential for work, but did record that Wayne complained of pain in the right chest and shoulder following any exercise. Dr. Eckley's prognoses was that the "[p]atient will probably undergo periods of remission with occasional relapse."

The most exhaustive part of the objective medical record is Dr. C. Hege Kapp's report. Dr. Kapp reviews the claimant's history of ulcers and the functional limitation in movement of the right arm. He is the first to diagnose claimant's respiratory distress as emphysematous. Unfortunately, Dr. Kapp gave no opinion as to the ultimate disabling or limiting effect of the conditions, but confined himself to the objective diagnosis that the conditions did in fact exist.

Dr. Kapp examined the patient on April 10, 1963—three months and ten days after the end of claimant's eligibility period. (In order to establish a period of disability, Wayne must show he was totally disabled before December 31, 1962.) This short period can serve neither to rob the report of its evidentiary character nor lessen its probative value. There is no doubt that ulcers and residuals of the accident existed prior to December 31, 1962. In further recognizing that emphysema is not an impairment developed overnight, the Court cannot be

said to have divorced itself from judicial reasoning.

Dr. W. W. Miles, the Wayne family physician, stated in several reports that the claimant could perform no work. He noted that chances of improvement were hopeless.

Dr. Fred C. Hubbard, the surgeon who admitted Wayne to the hospital following the accident, having examined him on several occasions, stated that he was totally disabled. He also noted a generally weakened physical condition.

Both parties have moved for summary judgment. Questions facing this Court are:

1. *Did the hearing examiner apply proper legal standards in evaluating the evidence?*

From the transcript of the rehearing and his decision upon that rehearing, it is obvious that the examiner placed undue weight upon the objective record as interpreted by the medical witness.

"The hearing examiner has noted the statements in the file by Dr. Hubbard and Dr. Miles to the effect that the claimant is and has been unable to work. *However,* he is also cognizant of the fact that § 223 of the Social Security Act as amended in 1967 reads in part as follows:

" 'For purposes of this section, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.'

"*With the foregoing in mind,* the Hearing Examiner places *particular importance* on the Baptist Hospital reports * * *" (Here he refers to the reports of Dr. Holmes, Dr. Kapp and Dr. Miller) (Emphasis added)

This is a statement of the examiner's understanding of the law. It is incorporated from the original hearing decision into the decision following the rehearing by reference.

The very wording of the Amendment is clearly illustrative of legislative intent. Congress, guarding against social leeching by malingerers, demanded that *abnormalities* be demonstrable. *Impairments* resulting from demonstrated abnormalities are, for the purposes of the Act, determined by the previously quoted criteria of *Underwood* and *Hayes* —(1) objective evidence; (2) medical opinion of examining doctors; (3) subjective complaints as corroborated by spouse and neighbors; and (4) present age, education and vocational background.

By interpreting the law to require consideration of objective evidence, in disregard of other factors, the examiner committed error.

2. *Does the record as a whole contain substantial evidence to support a finding against the claimant?*

Dr. Hubbard and Dr. Miles were the only examining and treating physicians of record who, having knowledge of all impairments, expressed an opinion involving claimant's work potential. As previously indicated, they agreed that Wayne was permanently and totally disabled.

The subjective evidence stands uncontradicted.

In Hayes v. Gardner, *supra*, the court, noting expert medical opinion to the effect that "a family physician is always more familiar with a patient than one that is just looking at the objective evidence we have on paper" held that the opinion of a doctor who has never examined or treated the claimant (the expert medical witness) cannot serve as substantial evidence in the face of contradictory opinion evidence as to the existence of a disability, the uncontradicted subjective evidence, and the claimant's vocational and educational backgrounds. What was said there applies to the facts in this case.

For the foregoing reasons, it is concluded that the findings of the Secretary are not supported by substantial evidence nor were proper legal standards

applied in evaluating the evidence. It follows that the motion of the plaintiff for summary judgment should be granted, and the motion of the defendant for summary judgment should be denied.

A judgment will be entered accordingly.