**Edna C. ITTEILAG**

v.

**Elliot RICHARDSON, Secretary of Health, Education and Welfare.**

**Civ. A. No. 4455.**

United States District Court,
D. Rhode Island.

March 14, 1972.

Joseph F. Dugan, Rhode Island Legal Services, Inc., Providence, R. I., for plaintiff.

Lincoln C. Almond, U. S. Atty., Joseph C. Johnston, Asst. U. S. Atty., Providence, R. I., for defendant.

## OPINION

DAY, District Judge.

This is an action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to review a "final decision" of the Secretary of Health, Education and Welfare denying the plaintiff's application for Widow's Insurance Benefits, under section 202(e) of said Act, 42 U.S.C. § 402(e), as the disabled widow of a deceased wage earner. It is now before me on the cross motions of each of the parties for summary judgment.

Section 202(e)(1)(B) of said Act, 42 U.S.C. § 402(e)(1)(B) provides for the payment of benefits to a widow of an individual who died fully insured who—

". . . has attained age 50 but who has not attained age 60 and is under a disability (as defined in 423(d) of this title) which began before the end of the period specified in paragraph (5)."

The lengthy record of this case shows that the plaintiff, who was born on November 27, 1913, and who is the widow of a fully insured wage earner who died in July, 1966, originally applied for widow's disability benefits in August, 1967. Said application was filed with the Connecticut Agency of the Social Security Administration. She was found by its examiner to be eligible for such benefits under said Section 402(e) of 42 U.S.C. The basis for the award of benefits was that she was disabled by chronic anxiety neurosis coupled with a chronic gastric ulcer. Said award was later vacated and her application for benefits was dismissed on the ground that said Connecticut Agency lacked jurisdiction to entertain and decide her application because she was a resident of Westerly, Rhode Island.

Subsequently, on May 14, 1969, the plaintiff filed a similar application with the Rhode Island Agency of said Social Security Administration claiming she suffered from an ulcer and pressure at the base of her skull, which caused her pain and made it impossible for her to work. In support of her claim she submitted medical reports from her physicians, Dr. Joseph Ruisi and Dr. Louis A. Saxe.

In his report Dr. Ruisi, who had treated the plaintiff for many years, diagnosed her condition as chronic anxiety neurosis and ulcer syndrome. Dr. Saxe, a psychiatrist, to whom Dr. Ruisi had referred the plaintiff, diagnosed her condition as chronic psychoneurosis depression. In June of 1969 the examiner for defendant required additional medical information to evaluate plaintiff's condition, and directed her to Dr. Bernard Lavergne of New London, Connecticut for an examination. Dr. Lavergne's report, dated July 14, 1969, concluded:

"Because of her emotional state, I feel this patient is definitely handicapped, is unable to work and should be given some financial assistance."

Thereafter, on August 26, 1969, the defendant's examiner requested that the plaintiff be interviewed by Mrs. Ruth Levy, a psychiatric social worker, for the purpose of obtaining more medical information. In her summary of her interview with the plaintiff on September 10, 1969, Mrs. Levy stated:

(Mrs. Itteilag) " . . . gives the impression of a person who has had an emotional problem for a long period of time and that it has become a part of her everyday living. It would seem that she could not divorce herself from it or separate herself from it. She has adjusted to it, accepted it and lives with it. I truly believe when she

said she could not go out to work that she cannot. The threat of a push in this direction might upset the balance she has created for herself."

On October 13, 1969 the plaintiff was advised that, based upon the medical evidence and her statements, her condition was not severe enough to meet the disability requirements of the law and that her application was denied. The physician, upon whose opinion the decision was based, was Dr. Sandro C. Aninas who examined the medical reports submitted by the plaintiff but did not examine or interview the plaintiff.

Thereafter, on October 20, 1969, plaintiff requested a reconsideration of said decision. Subsequently the examiner requested the plaintiff to see Dr. Alois Svagan, a psychiatrist engaged by him to make a psychiatric evaluation of her. In his report, dated January 7, 1970, Dr. Svagan diagnosed her condition as being "Depressive Neurosis with anxiety". He found that "her concentration ability was poor, her memory slightly impaired, her psychomotor activity markedly decreased and her insight and judgment only fair".

The record of this case also shows that on January 13, 1970, a reviewing physician, the medical advisor, whose name is not discernible from the record, advised the examiner that plaintiff was not disabled. He did not examine or interview the plaintiff. On January 20, 1970 the plaintiff was notified that her request for reconsideration was denied. Subsequently, on January 28, 1970, she requested a hearing before a hearing examiner. Said hearing was held on May 20, 1970. During this hearing the plaintiff testified in support of her application and was questioned at great length by said hearing examiner as to the existence and nature of her claimed disability, as to the existence and extent of pain suffered by her and as to the restriction in her activities caused by her condition. Her testimony shows that she is unable to bathe herself and to walk without assistance from her home to her nearby mail box, that she spends the greater part of the day lying down and resting, and that severe pains at the base of her skull require frequent applications of an ice bag to her neck to alleviate her pains. No evidence was presented which would indicate that her testimony as to the pain suffered by her and as to the restriction in her activities was unworthy of belief. It was, in fact, corroborated by the testimony of her son and by a letter from her neighbor who saw her daily, who assisted her in bathing herself and who aided her in her house work and in walking to her mail box, to which she could not walk without aid.

During said hearing the plaintiff presented as evidence an additional report of Dr. Louis A. Saxe, dated December 2, 1969. In this report Dr. Saxe stated:

"There is no question in my mind that this woman is unable even to partially support herself in her present mental state. Although she seems somewhat better than she had been when I first saw her in 1964, she is still suffering from a CHRONIC PSYCHONEUROSIS with some depressive elements. Her phobic symptoms persist and are disabling."

At the conclusion of said hearing the hearing examiner reserved decision. On July 28, 1970, he filed a written decision denying her claim for widow's disability benefits. In said decision he held that the period during which the plaintiff may establish that she is under a disability extends to June 30, 1973, "that the medical findings shown by the preponderance of the medical evidence establish that the claimant has the following impairments: (a) chronic depressive neurosis with anxiety, and (b) chronic duodenal (peptic) ulcer, in remission, adequately controlled by diet and medication". Notwithstanding these findings, he concluded that said medical findings with respect to the plaintiff's impairments were not equivalent in severity and duration to any of the impairments listed in the Appendix to Subpart P of the Social Security Reg-

ulation No. 4, that she was not under a "disability" as defined in Section 223(d) of said Act, 42 U.S.C. § 423(d) and was not entitled to widow's insurance benefits under Section 202(e) of said Act, 42 U.S.C. § 402(e).

The plaintiff promptly sought a review of said decision by the Appeals Council which was denied on September 16, 1970. The instant action was then timely filed in this Court on November 13, 1970.

■ The issue presented for determination by this Court is whether or not the Secretary's denial of disability was supported by substantial evidence. Reyes Robles v. Finch, 409 F.2d 84 (1st Cir. 1969); Bailey v. Gardner, 368 F.2d 841 (6th Cir. 1966). In Reyes Robles v. Finch, supra, the Court of Appeals said 409 F.2d at page 86:

"The question posed to the district court by the cross motions for summary judgment was whether or not the Secretary's denial of disability was supported by substantial evidence. Rials v. Ribicoff, 207 F.Supp. 904, 905 (W.D.Ky.1962); cf. Ledbetter v. Celebrezze, 324 F.2d 735 (5th Cir. 1963). We deem ourselves compelled to reverse. The district court's concern for the injured individual who seeks disability is understandable. But courts are circumscribed both as to the reach of the Social Security statutes regarding disability and as to the scope of review of agency action. As to the protection afforded by these statutes, they are not an ancillary employment compensation device. And as to the scope of review 'substantial evidence' is a stringent limitation."

"Substantial evidence" has been defined to be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

Despite this limited scope of review, this Court must perform its duty under the statute. In Thomas v. Celebrezze, 331 F.2d 541 (4 Cir. 1964), the Court of Appeals held at page 543:

"The Secretary, and not the courts, is charged with resolving conflicts in the evidence and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational . . . ."

Since the plaintiff has not reached the age of 60, to be entitled to a widow's insurance benefits she must be suffering from a "disability" as defined in the provisions of 42 U.S.C. § 423(d) (2) (B). Said section defines the term "disability" as follows:

"(B) a widow, surviving divorced wife, or widower shall not be determined to be under a disability (for purposes of section 402(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity."

The specific impairments or their equivalents and the level to which they must rise before a widow is determined to be under a disability are set forth in the Appendix to Subpart P of 20 C.F.R. §§ 404.1504–404.1506.

The record in this case sets forth the professional qualifications of the four physicians who examined or interviewed the plaintiff. There is no evidence in

the record as to the professional qualifications of the physicians who did not examine or interview the plaintiff.

█ The hearing examiner apparently based his decision upon the reports of these physicians who did not examine or interview the plaintiff and upon his observations of the general demeanor and appearance of the plaintiff. It was his duty to accord substantial weight to the expert opinions of the physicians who had examined or interviewed the plaintiff. In Weaver v. Finch, 306 F.Supp. 1185 (W.D.Mo.1969), the Court held at page 1193:

"While the opinion of medical examiners in respect of disability is not binding upon the hearing examiner, the hearing examiner's finding cannot be contrary to such opinion in the absence of substantial evidence to the contrary. Pollard v. Gardner [D.C., 267 F.Supp. 890], supra. See, also Ross v. Gardner (C.A.6) 365 F.2d 554, 559; Celebrezze v. Warren (C.A.10) 339 F.2d 833; Nelms v. Gardner (C.A.6) 386 F.2d 971. . . ."

█ Additionally, it should be noted that limited weight should be given to opinions of physicians who have not examined a claimant. In Hayes v. Gardner, 376 F.2d 517 (4 Cir. 1967), the Court of Appeals said at page 520:

". . . We reach the conclusion that in view of the opinion evidence as to the existence of disability, combined with the overwhelming medical facts, the uncontradicted subjective evidence and claimant's vocational background, the opinion of a doctor who never examined or treated the claimant cannot serve as substantial evidence to support the Secretary's finding . . ."

To the same effect, see Wayne v. Finch, 313 F.Supp. 898 (M.D.N.C.1969).

█ Section 12.04 of said Appendix to Subpart P. sets forth the guidelines for the determination of the existence of the impairments claimed by the plaintiff in this case. It reads in pertinent part as follows:

"12.04 *Functional nonpsychotic disorders (psychophysiologic, psychoneurotic and personality disorders).* Manifested by marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people and persistence of one of the following:

A. Demonstrable structural changes mediated through psychophysiological channels (e. g. duodenal ulcer); or

B. Recurrent and persistent periods of anxiety, with tension, apprehension and interference with concentration and memory; . . ."

The uncontroverted testimony of the plaintiff establishes a marked restriction of her daily activities, constriction of interests and an impaired ability to relate to other people. She spends a large part of the day lying down, suffers considerable pain and never leaves her home unless accompanied by someone. She cannot bathe herself without assistance, cannot clean her home without assistance and cannot walk alone to her mail box. Her only diversions consist of reading the newspapers and watching television for short periods of time.

In his decision the hearing examiner placed emphasis on the fact that Mrs. Itteilag was neatly dressed. Undoubtedly her appearance would have been far different if she did not have the daily assistance of her neighbor.

The testimony of each of the physicians who examined the plaintiff establishes beyond any doubt that the plaintiff has a duodenal ulcer. Dr. Lavergne, who examined the plaintiff at defendant's request, stated in his opinion that said ulcer is probably the result of her anxiety.

The record in this case clearly establishes that the plaintiff is suffering from the impairments listed in said section 12.04(A) and (B) of said Appendix to Subpart B or their equivalents which preclude her from engaging in any gainful activity. After a careful considera-

tion of said record, it is my considered judgment that the determination by the Secretary was not supported by substantial evidence.

Accordingly, the plaintiff's motion for summary judgment in her favor is granted, and the defendant's motion for summary judgment is denied. Counsel for the plaintiff will prepare and present for entry an appropriate judgment.