**Robert L. HAMMOND, Plaintiff,**

v.

**Robert FINCH, Secretary of Health, Education and Welfare (now Elliot L. Richardson), Defendant.**

**Civ. A. No. 69–C–44–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

May 5, 1972.

Glen M. Williams, Jonesville, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

WIDENER, District Judge.

This is an action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying claimant's application for the establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i), and for disability benefits as provided by § 223 of the Act, 42 U.S.C. § 423.

The claimant, Robert L. Hammond, applied on April 21, 1967 for a period of disability commencing on September 5, 1966 and for disability insurance benefits. He alleged that he was disabled because of arthritis of the spine, emphysema, a stroke, ulcers, and hardening of the arteries. His evidence also claims disability because of mental deterioration and a nervous condition. The application was denied initially and upon reconsideration. Claimant's request for a hearing was granted, and a hearing was held on July 17, 1968. By written decision dated September 4, 1968, the hearing examiner, having considered the case *de novo*, found that claimant was not under a disability. On March 21, 1969, after receiving additional evidence, the Appeals Council affirmed the hearing examiner's decision, thereby making it the final decision of the Secretary.

The only issue before this court is whether, from the record, the decision of the Secretary is supported by substantial evidence. "Substantial evidence" is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If this court finds that the Secretary's decision is so supported, its inquiry must cease, and the Secretary's decision will be affirmed, even though the court might disagree with the Secretary's determination. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962); Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967).

At the time of his application, claimant was fifty-five years of age. He has a seventh grade education. Hammond's work history includes farming and employment at Tennessee Eastman Company as a transfer agent.

Before the hearing examiner, Hammond testified that he had last worked in September of 1966 and that he quit work because he passed out on the job. He stated that he was told he had suffered a stroke. Claimant stated that he takes medicine for pain and nervousness and sees a doctor once a month.

Mrs. Ella Hammond, claimant's wife, and William R. Darnell, claimant's brother-in-law and co-worker, also testified. Both Mrs. Hammond and Mr. Darnell believed that claimant's personality has changed since the stroke in September, 1966. Mrs. Hammond stated that her husband's mental alertness and memory were failing.

The Holston Valley Community Hospital records reveal that claimant was hospitalized on September 20, 1966 and was discharged on September 29, 1966 in an essentially unchanged condition. Hammond's chief complaint was numbness in his left leg, but he also complained that the left side of his head hurt and that there was a burning sensation on the left side of his face. His neck was flexible, but there was pain in motion. Hammond's left hand grip was weak. The

Romberg test was slightly positive. An electrocardiogram showed right bundle branch block, but this electrocardiogram was essentially the same as previous ones. Claimant's heart beat was regular. Claimant's lungs were found to be clear. A brain scan was suspicious but not definitely positive. Although there was no seizure activity present, an electroencephalogram revealed a nonspecific, borderline tracing. The possibilities of a central nervous lesion, a cerebrovascular disease, difficulty in the vertebral basilar system, and the recurrence of an old lumbar cervical and lumbar disc problem were considered. Dr. Donald W. Bales, the attending physician stated:

"The differential diagnosis would be between arterial disease of the right side of the brain or right sided brain tumor."

The final diagnosis, however, was "weakness and incoordination of left arm and leg, cause undetermined, possibly due to vasilar vertebral artery disorder."

Claimant was subsequently admitted to the North Carolina Baptist Hospital, because of mental deterioration, according to a report dated December 2, 1966 from Dr. Karl E. Sazenbacker, neurologist. Claimant's medical history was not remarkable, but Hammond did state that he had suffered back pain since 1940. A physical examination was essentially normal. The neurological examination indicated that claimant was alert and oriented to time, place and person. A motor examination revealed decreased strength, muscle tone, sense of touch and position sense on the left. It was noted that claimant's station and gait were wide based and that the patient was somewhat incoordinated. A brain scan was found to be normal and an electroencephalogram was considered only mildly abnormal. The lumbar puncture was normal. A psychiatric evaluation revealed intellectual impairment and reactive depression. Final diagnosis was ". . . a right parietal infarction secondary to vertebrobasilar

disease with organic intellectual impairment." It was felt that plaintiff was unable to work and was permanently incapacitated for any type of intellectual endeavor.

Hammond was examined on April 24, 1967 by Mr. Clayton Lee Carpenter, a psychologist. The Wechsler Adult Intelligence Scale Test revealed that claimant had a dull-normal verbal I.Q., a normal performance I.Q., and a dull-normal full scale I.Q. The deterioration index indicated a deterioration of twenty percent. There were some indications of left cortical difficulty, that probably resulted from the stroke in September, 1966. Mr. Carpenter believed claimant capable of handling his own funds.

Claimant was examined on May 24, 1967 by Dr. Horace B. Cupp, Jr., a specialist in neurologic surgery. There was no evidence of motor or sensory loss, although the motor examination revealed hopeless withholding of power on the left side without obvious atrophy. Position sense was allegedly lost in the left foot and hand. Dr. Cupp noted many inconsistencies in his examination and felt that claimant had feigned some responses. Dr. Cupp concluded his report with the following:

"This man's primary difficulty is functional, there may be underlying organic neurologic disease but it is impossible for me to find in this setting."

Dr. Marshall D. Hogan, Jr., a psychiatrist, examined Hammond on June 16, 1967. Claimant was openly hostile and antagonistic during the interview. Dr. Hogan also noted many inconsistencies in claimant's behavior. For example, claimant walked with a pronounced limp, yet he rose quickly and effortlessly from his seat. Although he complained of a poor memory, he answered questions about his medical history and work history in minute detail. Dr. Hogan's examination revealed that Hammond was oriented in all spheres, of dull average intelligence, and of good judgment. His memory was found to be perfectly intact

for both recent and remote events. Claimant evidenced neither illusions, delusions, nor hallucinations. Dr. Hogan came to the following conclusion:

"I can offer no particular diagnosis for this patient. I concur in the opinion of Dr. Cupp that there is an element of functional overlay so strong as to force the observer to conclude that the patient is either wilfully or subconsciously malingering."

Dr. Wilson W. Powers, a specialist in internal medicine, examined Hammond on October 5, 1967. At times during the examination, claimant limped on his left leg, but at other times, he walked briskly without limp or incoordination. Tests for muscle strength in the extremities revealed extreme weakness. Dr. Powers observed, however, that when claimant was not being tested, he skillfully and effectively used his arms and legs for maneuvers that required strength. A pulmonary function study showed inconsistencies and was not felt to represent claimant's best performance. An electrocardiogram was normal. Claimant's blood pressure was slightly elevated. Dr. Powers noted that claimant's medical history was not typical of cerebrovascular accidents. Dr. Powers found no objective evidence of cardiovascular disease or of an organic nervous system disease or of any abnormalities which would account for claimant's complaints.

A report from Dr. J. M. Frere, Jr., radiologist, revealed that an x-ray examination of claimant's chest on October 5, 1967 was negative for active diseases.

Claimant was seen on October 5, 1967 by Dr. Sidney L. Wallace, orthopedic specialist. Dr. Wallace noted some limitation of motion in the back. The tendon reflexes in the knee, ankle, and upper extremities were equal and active. X-rays of the lumbar spine revealed narrowing of the L–5, S–1 interspace with some osteophyte formation. Dr. Wallace stated:

"This patient in my opinion, probably has residual disc sequelae of L–5 on the left, although this is difficult to distinguish from sequelae of the left hemiparesis. I do feel that the patient has sufficient impairment that he probably can not perform any activities that would require long standing, bending, squatting or placing his trunk in positions that might impair his balance. I do feel however, that this patient is certainly able to perform activities in a sitting posture and this could be done indefinitely."

Dr. Bales, Hammond's treating physician, submitted an additional report, stating that he had last seen claimant on March 21, 1968. Dr. Bales reported no new findings. It was his impression that claimant was suffering from a central nervous system disease, partly functional and partly organic.

In a report dated April 26, 1968, Dr. Robert E. Keith, specialist in occupational medicine and doctor for the Tennessee Eastman Company, stated that claimant was employed at Tennessee Eastman from April, 1941 until disability retirement in 1967. The primary cause of claimant's disability was vascular disease involving the cerebral and vertebral arteries. According to Dr. Keith, Hammond sustained a mild vascular accident in September, 1966, which left some residual damage. Dr. Keith also stated that claimant had pulmonary emphysema and a lumbar disc disease.

The record shows that Hammond does receive disability compensation from the Tennessee Eastman Company. However, this determination of disability, while it may be entitled to consideration, is not binding upon the Secretary. 20 C.F.R. § 404.1525.

At the request of the Appeals Council, Mr. C. L. Carpenter again evaluated claimant. The results of the Wechsler Adult Intelligence Test, administered on December 30, 1968, placed claimant within the middle of the borderline classification for his age group. The deterioration index indicated a deterioration of approximately fifteen percent. The Projective Personality Test revealed hos-

tility, withdrawal, and some personality imbalance. No fantasy was noted and Mr. Carpenter thought claimant capable of handling his own funds.

Dr. Hogan again examined claimant on January 7, 1969 at the request of the Appeals Council. Dr. Hogan again noted the variance between Hammond's claims and his performance. While claimant alleged memory impairment, he described past events in minute detail. Dr. Hogan found claimant mentally competent and capable of handling money. Dr. Hogan was again unable to make a psychiatric diagnosis.

■ Since plaintiff was retired for physical reasons from his former occupation at Tennessee Eastman, it must be assumed he was unable to continue in it. Thus, the burden is on the Secretary to show an occupation which claimant is capable of performing. Boyd v. Gardner, 377 F.2d 718, 721 n. 4 (4th Cir. 1967). Dr. N. E. Hankins, a vocational expert and psychologist, was present and testified at the hearing before the hearing examiner. On the assumptions that claimant had suffered a moderate cerebral vascular accident in September, 1966, had a back condition which prevented him from performing manual labor, from lifting, standing for prolonged periods, and flexing his back, had a moderate degree of difficulty in breathing due to emphysema, had borderline elevated blood pressure, and had a moderate degree of psychogenic overlay manifested by feelings of weakness, Dr. Hankins testified that, in his opinion, claimant was capable of performing several jobs which existed in the local economy in significant numbers. He specifically mentioned the jobs of taxicab dispatcher, deburrer, checker, and shuttle fixer. He described the duties of these jobs. Hankins' testimony could have been, and was, credited by the examiner, particularly as to the bench jobs which required little or no exercise of intellectual powers.

■ The claimant has the burden of proving that he is under a disability as defined by the Social Security Act. 42 U.S.C. § 416. Griffey v. Cohen, 299 F. Supp. 714 (W.D.Va.1969), aff'd. 421 F. 2d 187 (4th Cir. 1970). Of course, this burden need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964). This court is of opinion that claimant has not sustained his burden of proof, for there is substantial evidence to support the conclusion of the Secretary that claimant's impairments, singularly or in combination, do not entitle him to a period of disability or to insurance benefits.

■ Hammond claims that he is disabled because of ulcers, emphysema, arthritis of the spine, a stroke, hardening of the arteries, mental deterioration, and a nervous condition.

There is no medical evidence in the record pertaining to the claim of ulcers, no indication that claimant has ever taken any treatment for ulcers, and no subjective complaints indicative of ulcers. Therefore, this claim is completely without factual support in the record.

There is only scant evidence in the record pertaining to emphysema. The Holston Valley Community Hospital records show that claimant's medical history includes emphysema. Dr. Keith, at Tennessee Eastman, reports that claimant had pulmonary emphysema. There is, however, no indication by either of these documents of the severity of the condition. Furthermore, chest x-rays taken in October, 1967 were negative for active lung diseases. Dr. Powers' examination also showed an essentially normal ventilatory system, even though Dr. Powers felt that claimant's responses did not reflect his best performance. To the extent that there was a conflict in the evidence, it was incumbent upon the Secretary to resolve those differences. Moss v. Gardner, 411 F.2d 1195 (4th Cir. 1969). The mere existence of an impairment or disease is not, in and of itself, disabling. To be disabling, the impairments must be of such severity that they render the claimant unable to engage in any substantial

gainful activity. 42 U.S.C. § 423(d) (1) (A).

Another of claimant's allegedly disabling impairments is arthritis of the spine. While there are no specific references to arthritis of the spine in the record, there are references to back pain and a lumbar spine condition. Dr. Sanzenbacker was informed by claimant that he had had lumbar, thoracic, and cervical pain and leg weakness since 1940, which claimant had been told was due to lumbar spine disease. Dr. Bales noted that Hammond's medical history included a ruptured disc. Several of the examining physicians found weakness in the extremities, but several of those doctors were also of the opinion that this weakness was being feigned by claimant. Dr. Wallace thought that claimant had a residual disc problem or hemiparesis and believed that claimant's back condition would probably prohibit activities requiring prolonged standing, bending, or squatting. Dr. Wallace, however, thought that claimant definitely possessed the residual capacity to perform activities in a sitting position. There is substantial evidence to support the Secretary's finding that claimant's back condition is not disabling.

Hammond alleges disability on account of a stroke and hardening of the arteries. There appears to be no evidence of hardening of the arteries in the record, but inasmuch as there is some evidence connecting the alleged stroke to an artery or vascular problem, these two claims will be considered together. Dr. Keith, at the Tennessee Eastman Company, reported that claimant had suffered a cerebral vascular accident in September, 1966. When claimant was discharged from the Holston Valley Community Hospital in September, 1966, final diagnosis was weakness and incoordination of the left arm and leg, cause undetermined, possibly due to a basilar vertebral artery disorder. It was the impression of the doctors at North Carolina Baptist Hospital that claimant had a right parietal infarction secondary to vertebrobasilar disease with organic intellectual impairment. However, Dr. Powers, who examined claimant in October, 1967, found no objective evidence of cardiovascular disease, or of an organic nervous system disease, or of any abnormalities which would account for claimant's complaints. He further stated that claimant's medical history was not typical of cerbrovascular accidents. As noted above, any conflict in the evidence was to be resolved by the Secretary. *Moss,* supra.

Furthermore, the evidence fails to show that the alleged stroke resulted in physical or mental impairments of sufficient severity to be disabling within the meaning of the statute. As noted above, some of the examining doctors found some incoordination and loss of strength. Several of the examining doctors, however, felt that claimant's responses were being feigned. For example, Dr. Powers observed that when claimant was not being tested, he moved about briskly, in a coordinated manner, and skillfully used his extremities for activities that required strength.

Finally, there is substantial evidence to support the Secretary's determination that claimant is not disabled on account of mental deterioration or a nervous condition. Although it was Dr. Bales' impression that claimant had a central nervous disorder, partly functional and partly organic, neither Dr. Powers nor Dr. Cupp could find objective evidence of an organic nervous disorder. Testing did reveal fifteen to twenty percent mental deterioration, and it was the impression of the doctors at North Carolina Baptist Hospital that claimant had some organic intellectual impairment. Nevertheless, many other examinations revealed that claimant has dull average intelligence, is of good judgment, and is capable of handling his own funds. Dr. Hogan found claimant's memory to be intact for both remote and recent events and thought that claimant was mentally competent.

In considering whether claimant was disabled within the meaning of the Act, the Secretary properly considered

the total effect of all of claimant's conditions, against the background of claimant's education, work history, and age. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968).

It is the conclusion of the court that in this case, which is essentially one of conflict of evidence, the decision of the Secretary is supported by substantial evidence.

An order is this day entered consistent with this opinion.