**Eugene E. BILLIPS, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 71–C–104–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

June 28, 1972.

Robert W. Hensley, Bluefield, W. Va., Douglas G. Campbell, Harman & Campbell, Tazewell, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

WIDENER, Chief Judge.

On February 24, 1970, Eugene Earl Billips applied for Social Security Disability Insurance Benefits. At the time of his application, Billips stated that the disability preventing him from working was: "Sugar, legs stiff, feel bad." He stated that he became unable to work in 1955 due to these disabilities.

On April 17, 1970, Billips was notified that the Social Security Administration had determined that his condition was not considered disabling within the meaning of the law on any date through December 31, 1965, which was the last day on which he met the earnings requirement.

On April 29, 1970, Billips requested reconsideration of the decision to deny him disability benefits. He stated as his reason for disagreement with the determination: "I am unable to work." He submitted as additional evidence, to be considered upon reconsideration, a medical report from Dr. G. B. Kegley.

On October 1, 1970, Billips was notified by the Bureau of Disability Insurance of the Social Security Administration that the previous decision denying him benefits was proper under the law.

On December 3, 1970, Billips' attorney requested a hearing before a hearing examiner of the Bureau of Hearings and Appeals. He stated as his reason for requesting the hearing: "Mr. Billips has

been unable to engage in substantial gainful activity since on or before 12/31/65. Benefits should be awarded based on additional evidence hereby submitted." The hearing was held on February 3, 1971 in Bluefield, West Virginia. Billips appeared and was represented by his attorney. Ethel Billips, Billips' sister, William J. Ramsey, his brother-in-law, and Dr. D. M. Wayne, director of the Bluefield Mental Health Clinic, also appeared and testified. Dr. Wayne also has a written report in the record.

The hearing examiner announced his decision on March 5, 1971, which was essentially that Billips' impairments, as of December 31, 1965, did not prevent him from engaging in substantial gainful activity for any continuous period of at least twelve months. The examiner, in his six-page decision, made the following specific findings:

"1. The claimant, on February 24, 1970, filed a valid application for disability insurance benefits.

2. The claimant last met the special earnings requirements for disability insurance benefit purposes on December 31, 1965.

3. The claimant was born on February 26, 1915; is 55 years of age; has a seventh grade education; worked as a laborer in a powder plant and as a self-employed farmer. He continues his light farm activities to the present time.

4. The claimant's physical impairments, diabetes mellitus controlled on insulin and diabetic diet, questionable bronchitis and emphysema, would not preclude claimant from engaging in the simple laboring tasks he formerly did, and is presently doing, on the farm.

5. The nervous system impairment of the claimant is not mentioned or indicated in the case record until October, 1970, even though claimant had been treated by his family physician for more than 24 years, at 3-month intervals, with the last reported examination on March 10, 1970, giving no indication of any nervous impairment. The hearing examiner concludes this nervous system impairment, if existent as of December 31, 1965, was not of the level of severity that would have prevented him from doing his previous work on a farm. The claimant has demonstrated this by actually operating the farm from 1955 to 1960 and reporting self-employment income which has been credited and shown on his social security earnings record. Also, claimant testified he is performing some farm work even at the present time.

6. The claimant's impairments, as of December 31, 1965, did not prevent him from engaging in substantial gainful activity for any continuous period of at least 12 months."

Additional evidence was filed after the decision, the principal items of which are reports from Dr. Leslie J. Borbley, a psychiatrist and the director of the Beckley Mental Health Center, and from Dr. G. B. Kegley, the family doctor. The Appeals Council, after receiving the additional evidence, affirmed the examiner.

An action was then filed in this court to obtain judicial review of the Secretary's decision under the provisions of 42 U.S.C. § 405(g) (§ 205(g) of the Social Security Act). The case is now here on cross motions for summary judgment.

The record contains a report dated March 10, 1970 prepared by Dr. G. B. Kegley, an otolaryngologist, who apparently was also in general practice. Dr. Kegley reported of Billips: "Has been a known diabetic since 1953. Takes insulin daily and can do only very light work around farm." His diagnosis was:

(1) Diabetes Mellitus

(2) Possible Chronic Bronchitis

(3) Possible Emphysema

Billips was hospitalized from August 4, 1964 to August 9, 1964 due to a diabetic coma. He was discharged markedly improved.

On October 22, 1970, Billips was given a neuro-psychiatric examination and a psychological evaluation at the Bluefield Mental Health Center in Bluefield, West Virginia. Dr. D. M. Wayne, a psychiatrist, reported that Billips was brought to the office with a relative and stated: "We do not think that this individual could have come to the office by himself. . . . The patient seemed to be in another world during the clinical interview." Several of the evaluation tests were not reported because Billips could not understand the instructions. Dr. Wayne reported several of the tests administered showed Billips to suffer from a chronic brain syndrome. His report gave the following diagnostic impression:

(1) Non-psychotic chronic brain syndrome, severe, chronic

(2) Mild mental retardation, I.Q. of 61.

Dr. Wayne stated in his report that Billips was an extremely poor prospect for any type of employment or any type of vocational rehabilitation services. He stated: "We would not be surprised at all if this patient were to need to be in a psychiatric hospital or in a rest home for the rest of his life." Dr. Wayne indicated that Billips' psychiatric impairment existed prior to December 31, 1965 and that he should be considered incompetent to handle his own funds.

In his oral testimony, Dr. Wayne related the history of the plaintiff. The plaintiff has obviously been mentally retarded from childhood. He contracted diabetes, and was instructed by various medical people as to how to administer his own insulin injections he was required to take for the disease. Being unable to understand, because of his mental state, how to properly administer his own medication, which fact was not understood by those instructing him, Billips has been the subject of many instances of insulin reactions from improperly administered injections which have caused permanent brain damage. The brain damage was thus superimposed on an already retarded mentality. Among the uncontradicted, unexplained, and undenied statements of Dr. Wayne which were given little or no weight by the Secretary are the following:

On the house-tree test and the Draw-A-Person test, the plaintiff functioned on the level of a three or four year old. (p. 73)

His intellectual function has been suppressed to a considerable degree due to severe psychiatric impairment. (p. 73)

His prognosis is extremely poor. (p. 73, 74)

He is a very poor prospect for gainful employment or vocational rehabilitation. (p. 74)

He is disabled within the meaning of Social Security Regulations, No. 4, Subpart P. (p. 75, et seq.)

He was severely impaired before 1965, around 1960 or 1961. (p. 77, 84)

He cannot perform simple repetitive tasks. (p. 78)

The mental disabilities of retarded individuals are generally overlooked by ordinary physicians. (p. 82, 83)

The patient seemed to be in another world during the interview. The examiner had extreme difficulty in communicating with this patient. (p. 82)

On April 19, 1971, Billips was given a psychiatric and psychological evaluation at the Beckley Mental Health Center, Beckley, West Virginia. Dr. L. J. Borbely, the director and a psychiatrist, indicated in his report that Billips had been having a great deal of difficulty coping with everyday stresses of normal life for at least the past fifteen years. Dr. Borbely indicated that the Bender-Gestalt visual motor test and memory for design strongly indicated an organic involvement, confusions, and lack of intellectual ability to function. Dr. Borbely stated that Billips was unable to perform the most simple tasks, has been "just vegetating," and apparently supported by his relatives.

Dr. Borbely's diagnosis was:

(1) Mental retardation, mild; Full scale I.Q. of 61.

(2) Chronic brain syndrome, chronic, moderate.

(3) Anxiety reaction, severe.

He noted that he did not feel Billips was able to perform at any type of employment even for a short period of time, either in home service or outside his home environment. Dr. Borbely gave as his opinion that Billips was psychiatrically withdrawn into a form of vegetative life and would continue to live that same type of existence.

Dr. G. B. Kegley submitted a statement, dated May 1, 1971, following his retirement, in which he stated that he had treated Billips for some twenty years. He related that Billips' mental status had always been low and that he felt throughout the twenty years he treated Billips that he was able to do only menial chores due to the mental impairment, which ability was further restricted, both mentally and physically, due to the development of diabetes mellitus. Dr. Kegley stated that from his former knowledge of Billips' impairments no great improvement can ever be expected in his condition.

Mr. Garnet Strock, age 51, a neighbor of Billips who has known him all his life, made a sworn certified statement to the effect that in the mid-1950's Billips became unable to operate the farm machinery.

■ The only issue before this court is whether, from the record, the decision of the Secretary is supported by substantial evidence. Substantial evidence is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If the court finds that the Secretary's decision is so supported, its inquiry must cease, and the Secretary's decision will be affirmed, even though the court may disagree with the Secretary's determination. Snyder v. Ribi-

coff, 307 F.2d 518, 520 (4th Cir. 1962); Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967).

■ It is the claimant who has the burden of proving that he is under a disability as defined by the Social Security Act. 42 U.S.C. § 416; Griffey v. Cohen, 299 F.Supp. 714 (W.D.Va.1969), aff'd. 421 F.2d 187 (4th Cir. 1970). This burden need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964).

The record leaves no doubt, and the defendant so states in his brief in support of the motion for summary judgment, that the hearing examiner did not accept the psychiatrist's opinion that Billips was totally disabled as of December 31, 1965. The report by Dr. Wayne clearly indicated the tests and examinations were administered to Billips in order for the doctor to arrive at his determination that Billips suffered from a chronic brain syndrome. Dr. Wayne's opinion was essentially corroborated by Dr. Borbely, when Billips was characterized as having "withdrawn into a form of vegatative life." Both psychiatric experts were confirmed in their diagnoses by Dr. Kegley, whose judgment indicates Billips became further restricted, both mentally and physically, following the development of diabetes mellitus.

■ The court considers the decisions of the hearing examiner and Appeals Council to have been wholly without foundation when they substituted their opinion for that of the psychiatrists, realizing that the additional reports by Drs. Borbely and Kegley were submitted after the hearing examiner's decision, but prior to review by the Appeals Council.

The undisputed fact in the record is that Billips suffered since childhood from a mental impairment which progressed after the onset of diabetes mellitus, and became disabling some time around 1960 or 1961. The examiner found that Billips was able to engage in farming, even though the undisputed

fact was that relatives, friends and hired hands did the labor which was necessary to make the farm productive. Mrs. Billips stated that she milked the cows each morning before going to work and in the evening when she returned. The record leaves no doubt that Billips must have constant supervision, and this certainly is not indicative of one who is able to engage in substantial gainful activity.

At the hearing, Billips' brother-in-law testified that the farm on which Billips lives was deeded to Billips' sister, individually, because of the fear on the mother's part of deeding the property to Billips. In view of the fact that this transaction was made in October, 1961, the court concludes that this indicates the progressive deterioration of Billips' condition and certainly is strong evidence that the mental impairment was no spontaneous occurrence in 1970, as assumed to be by the hearing examiner, even though totally contrary to the medical reports contained in the record.

The rule which must be applied in this case is that of Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964):

"Substantial evidence is more than a scintilla but less than a preponderance. . . . in short, the courts are not to try the case *de novo*. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational . . . if they are, they must be upheld; but if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary." 331 F.2d 541, 543.

This case, with no more than a whisper, not even amounting to a scintilla, to the contrary, presents the case of a man who is almost a complete physical and mental wreck. He has been retarded from youth, and superimposed on that has had diabetes with consequent insulin reaction causing organic brain damage. The reports of two separate psychiatrists, and the oral evidence of one of them, indicate that he is not capable of performing even the most simple repetitive tasks, much less sustained gainful employment.

The Secretary has not viewed the record as a whole. He has almost wholly discounted the uncontradicted, unexplained, and undenied testimony and reports of the two psychiatrists. He has placed undue reliance on one portion of the record, the inadvertent omission of Dr. Kegley, to the disregard of overwhelming evidence to the contrary. At the same time, while seizing on the inadvertent omission of Dr. Kegley, he has completely disregarded Dr. Kegley's supplemental report.

 In the opinion of the court, the record as a whole shows beyond a shadow of a doubt that the plaintiff is disabled within the meaning of the statute and that such condition existed prior to December 31, 1965.

An order is this date entered consistent with this opinion.