May L. HAYES, Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Appellee.

No. 10980.

United States Court of Appeals Fourth Circuit.

Argued March 9, 1967.

Decided April 6, 1967.

H. Clyde Pearson, Roanoke, Va. (Hopkins, Pearson & Engleby, Roanoke, Va., on brief), for appellant.

William C. Breckinridge, Asst. U. S. Atty., for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and HARVEY, District Judge.

BOREMAN, Circuit Judge.

May L. Hayes (sometimes hereinafter "claimant") filed an application for disability benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i), 423. The Hearing Examiner's denial of her claim was affirmed by the Appeals Council. Miss Hayes then appealed to United States District Court for the Western District of Virginia for judicial review pursuant to section 205(g), 42 U.S.C. § 405(g). The court below granted summary judgment for the Secretary and claimant prosecutes this appeal. We reverse and remand for a determination of benefits.

Claimant, presently fifty-four years of age, was born on May 29, 1912, and has been a lifelong resident of Roanoke, Virginia. She is unmarried and lives with her aged mother. Claimant received a seventh-grade education. She first went to work in 1933 at the American Viscose plant in Roanoke and was employed in the Reeling and "Cake Wrapping" Department. This plant ceased doing business in Roanoke in 1958 and claimant was compelled to seek work elsewhere. She found employment in a drugstore as a counter attendant or waitress and continued in that job until 1962 when, following several operations, she was advised by her regular physician to stop working. In 1964 she sought to return to work and did so for a brief period before her health again failed. It was in November of 1964 that she made application for disability benefits.

The objective medical evidence indicated that claimant had been under the care of her personal physician, Dr. Bartley, since 1950. During that time she has been treated for hypertension and it

was upon his advice that she ceased working in 1962 and again in 1964.

Claimant has undergone several operations. In April 1962 she entered Jefferson Hospital and her physical infirmities were diagnosed as uterine fibroids, serious cystadenoma of the ovary, endometriosis of ovary and chronic systic cervicitis. She underwent a total hysterectomy, a salpingectomy on the left, and an appendectomy. In August 1962 she underwent a fissurectomy at Roanoke Memorial Hospital and in November of the same year a hernioplasty to remedy a postoperative ventral hernia.

The record further reveals that claimant had undergone two operations in 1958, one involving the removal of a cyst from her breast and the other a hemorrhoidectomy and D & C. She was hospitalized for twelve days in 1962 as the result of a bladder infection.

There was opinion evidence as to claimant's physical condition. Dr. Bartley, who was not called as a witness, submitted a report dated December 12, 1964, in which he stated that he had treated Miss Hayes for hypertension since 1950 and that her present condition evidences headaches, blurred vision, substernal pain, high blood pressure —220/110—enlarged heart and coronary insufficiency. He prescribed rest, a regulated diet and medication and stated:

> "She is totally disabled for work. This applicant has had hypertension since March 1950. She has tried to work all the time. I feel she is now totally and permanently disabled."

Subsequently, in May and August 1965, Dr. Bartley stated in reports that Miss Hayes was under his care and that she was unable to perform any work. These reports were admitted into evidence at the hearing and are part of the record.

Dr. Homer Sieber examined claimant at the request of the Social Security Administration and diagnosed her condition as "systolic hypertension benign, without evidence of cardiac disease, no retinopathy, and no evidence of renal disease.

(2) Muscle tension * * *. (3) Irritable colon. (4) Chronic anxiety state." Dr. Luther C. Spengler, a Roanoke urologist, reported that from April 1963 to May 1965 Miss Hayes had made numerous visits to his office complaining of pain in the bladder and urinary tract.

Dr. Glendy, an employee of the Social Security Administration, was called as a witness. He did not examine claimant but based his opinion solely upon an examination of the medical record. He noted some discrepancy in the medical reports and stated that while claimant had some degree of hypertension, "there have been normal periods at times." He concluded that he saw "no contraindication why she couldn't do light forms of work that didn't involve any heavy lifting or straining or involve physical strain."

Claimant and her mother testified that claimant was subject to dizzy spells which frequently confined her to bed for several days at a time. Both testified that claimant suffered frequent headaches and that any exertion caused weakness requiring claimant to lie down; that on occasions she was forced to lie on a cot in the downstairs hall as she was too weak to stand or walk after descending the stairs.

An industrial psychologist testified that there were jobs available in the Roanoke area which claimant could perform. He stated that he was basically unfamiliar with the area but based his testimony primarily upon a list of jobs supplied by the local Chamber of Commerce although adverting also to the Dictionary of Occupational Titles. He was extremely evasive when asked if he had any knowledge with respect to the attitude of local employers as to employing someone whose health was as poor as that of claimant. His testimony is further discussed infra.

The district judge frankly stated in his letter opinion that he felt the evidence for claimant was "stronger than that for the government," but that the "substantial evidence" rule necessitated

granting of summary judgment for the Secretary. He found substantial evidence to support the Secretary's determination almost exclusively in Dr. Glendy's statement of opinion that claimant could do light forms of work.

■■ The only question before this court is whether there is substantial evidence to support the findings of the Secretary. Substantial evidence is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. Laws v. Celebrezze, 368 F.2d 640, 642 (4 Cir. 1966). If there is substantial evidence on the record as a whole to support the Secretary's finding we must accept it although we might disagree.

■ Establishment of a disability which would entitle one to benefits under the Act is a two-step process. First, there must be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months; and, second, there must be a factual determination that the impairment renders claimant unable to engage in any gainful employment. Laws v. Celebrezze, supra, 368 F.2d at 643; Brown v. Celebrezze, 367 F.2d 455 (4 Cir. 1966). See Thomas v. Celebrezze, 331 F.2d 541 (4 Cir. 1964).

■ In Underwood v. Ribicoff, 298 F.2d 850 (4 Cir. 1962), this court stated certain elements which must be considered in determining a particular claimant's ability to engage in substantial gainful activity. These are: "(1) the objective medical facts, which are the clinical findings of treating or examining physicians divorced from their expert judgments or opinion as to the significance of these clinical findings, (2) the diagnoses, and expert medical opinions of the treating and examining physicians on subsidiary questions of fact, (3) the subjective evidence of pain and disability testified to by Claimant, and corroborated by his wife and his neighbors, (4) Claimant's educational background, work history, and present age." Id. at 851.

■ It would seem that the objective medical facts—the numerous operations of a serious nature which she has undergone and her many continuing afflictions—establish that Miss Hayes has a disability which renders her unfit and unable to engage in any substantial employment. This is corroborated in large part by the subjective evidence supplied by claimant and her mother. The fourth element to be considered, claimant's age, educational background and work experience, indicates that she possesses few, if any, residual skills, is relatively uneducated and has reached the age at which it is difficult to meet or overcome the problems presented by the condition of her health.

The medical opinion evidence appears to be the only evidence supporting the Secretary's finding. It is noted that the district judge found that the testimony of Dr. Glendy supplied substantial evidence to support the Secretary's position. As previously stated, Dr. Glendy did not examine claimant but based his opinion on facts gleaned from the medical records. His opinion is at variance with that of Dr. Bartley who had treated Miss Hayes for the past fifteen years.

In Underwood v. Ribicoff, supra, 298 F.2d 850, we cautioned that medical opinions should not be conclusive in determining the ultimate fact, pointing out, however, that subjective evidence is always a strong source of corroboration, "especially where such evidence is uncontradicted in the record." Id. at 852.

■ In the instant case the opinion evidence supplied by one in the best position to furnish it—Dr. Bartley—substantiated Miss Hayes' claim that she is disabled within the meaning of the Act. Dr. Glendy's opinion is at odds with this evidence. We reach the conclusion that, in view of the opinion evidence as to the existence of a disability, combined with the overwhelming medical facts, the un-

contradicted subjective evidence, and claimant's vocational background, the opinion of a doctor who never examined or treated the claimant cannot serve as substantial evidence to support the Secretary's finding.[1] Indeed, Dr. Glendy admitted upon cross-examination that he was "sure a family physician is always more familiar with a patient than one that is just looking at the objective evidence we have on paper."[2]

 It remains to dispose of the testimony of Dr. Standahl, the industrial psychologist, who testified that there were jobs available in the Roanoke area which Miss Hayes could perform. Dr. Standahl virtually conceded his unfamiliarity with the Roanoke area, stating only that he had passed through while going to points in the northern Shenandoah Valley, approximately one hundred miles from Roanoke. His testimony was based primarily upon a Roanoke Chamber of Commerce list of business concerns in the general area from which he concluded that such jobs were available. He had no firsthand knowledge that such jobs were actually available or that they would be available to claimant in her physical condition, a woman who suffers dizzy spells upon the slightest physical exertion. There is no factual basis to support a reasonable inference that employers would be willing to employ a person with claimant's impairments. Abstract forecasts of employment are insufficient. In Cyrus v. Celebrezze, 341 F.2d 192 (4 Cir. 1965), in considering this issue, we held that "there must be evidence to show the reasonable availability of jobs which this particular claimant is capable of performing." Id. at 197. See Gardner v. Earnest, 371 F.2d 606 (4 Cir. 1967); Cochran v. Celebrezze, 325 F.2d 137 (4 Cir. 1963). There has been no such showing in this case.

Therefore the judgment below is reversed and the case will be remanded to the district court with directions to remand to the Secretary for a determination of the amount of benefits to which claimant is entitled.

Reversed and remanded.

---

1. This is not to say that the opinion of a doctor who has not examined or treated the claimant is never entitled to any weight. See Laws v. Celebrezze, 368 F.2d 640, 644.

2. He further stated "Well, I would think that if I had seen a patient intimately over a period of fifteen years, that I probably ought to know more about her than one who had only seen her one time."