Eugene KYLE, Appellant,

v.

Wilbur J. COHEN, as Secretary of Health, Education and Welfare, Washington, D. C., Appellee.

No. 13707.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1970.

Decided Oct. 12, 1971.

I. Duke Avnet, Baltimore, Md. (Herman Shapiro and Avnet & Avnet, Baltimore, Md., on the brief), for appellant.

Thomas J. Press, Attorney, Department of Justice (William D. Ruckelshaus, Asst. Atty. Gen., and Kathyrn H. Baldwin, Atty., Department of Justice, and Stephen H. Sachs, U. S. Atty., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge:

Eugene Kyle (hereafter Kyle or claimant) appeals from the order of the district court affirming the denial of the Secretary of Health, Education and Welfare of his application for disability insurance benefits under sections 216(i) and 223 of the Social Security Act.[1] Upon review of the entire record we affirm the lower court's finding of substantial evidence to support the decision of the Secretary.

Kyle, an illiterate laborer now about fifty-seven years old, began working at age thirteen. Until 1954 he was employed for the most part as a coal miner in West Virginia. From 1954 until 1965, he did construction work in Baltimore, Maryland, as a pipelayer, ditchdigger, wallstripper and, most recently, as a "pusher" and co-worker with a labor gang. The record clearly reveals that he is an accident-prone individual and that he is physically impaired as a result of a long history of rather severe injuries. In 1947, he was in an automo-

1. 42 U.S.C. §§ 416(i) and 423.

bile accident in which he sustained fractures of both legs plus injuries to the stomach, head and throat; in 1950, he fractured his left shoulder in a fall; in 1955, he twisted his left knee while working for a construction company; in May of 1959, he was temporarily totally disabled when his right leg was cut, but no permanent disability resulted therefrom; in December of 1959, he injured his back, resulting in 15% permanent partial disability according to his own doctor and 5% permanent partial disability according to an insurance doctor; in 1961, he injured his left hand and settled his workmen's compensation claim therefor on the basis of "more than 35%" ; in 1962, he injured his left side and back for which he was awarded 10% disability by the Workmen's Compensation Commission of Maryland. *He was able to return to his normal work at heavy labor after each of these accidents.* On April 26, 1965, he suffered a broken right leg when buried to the waist by a ditch cave-in. Although the medical reports show that his leg has healed with no more than minimal disability, he has not returned to work since that time.

The record indicates that Kyle has minor arthritis in his knees and ankles, high blood pressure (controlled by medication), a slightly enlarged heart, and a latent syphilitic condition. The essence of his claim is that his over-all medical condition and the residual difficulties from his prior accidents, combined with and aggravated by the physical trauma caused by the ditch cave-in, prevent him from performing any work for which his age, vocational background and education would otherwise qualify him.

Kyle offered subjective evidence of pain and other symptoms tending to establish his disability. He testified that he experienced, inter alia, dizzy spells, blurred vision, shortness of breath, headaches, pain in the chest, back and legs, and swollen knees and ankles. Indeed, as the Hearing Examiner stated, "[T]he claimant complained of difficulty with practically every part of his body, head, and extremities. When the Hearing Examiner called to the claimant's attention that he had not indicated any injury to his right forearm or hand, the claimant responded that he had difficulty with that extremity also in that the fingers of the hand would draw up in the shape of a claw; this also happened to the left hand." [2]

Claimant's wife testified that Kyle complained of stiffness of his right leg in the mornings, of shortness of breath, and of trouble with his legs while walking down steps. She stated that he could do no work around the house except light cleaning.

The opinion evidence offered before the Hearing Examiner as tending to support Kyle's claim consisted primarily of the transcript of the testimony of Kyle's treating physician, Dr. Caguin, and Mrs. Julia Gerber, the owner/operator of several employment

---

2. It is clear from the Hearing Examiner's opinion that he did not believe that Kyle's testimony presented an accurate picture of claimant's physical condition. The examiner stated:

In the opinion of the Hearing Examiner, this claimant has decided that he will not again place himself in danger of another cave-in and that he will not transfer his residual physical capacity to a less remunerative and less dignified occupation. This the claimant has a right to do. But the symptoms of which he complains as justifying his decision are grossly exaggerated and unpersuasive. The claimant's tendency to exaggerate symptoms is patent. He is seizing upon every possible symptom from which he has suffered in the past and which is suggested to him now to excuse his not returning to gainful activity. He has no desire to return to the dangers of his usual work even though he is no more physically impaired now than he was immediately preceding the most recent fracture of the right leg. Although this claimant previously showed good motivation in returning to work following injuries of a much more serious nature, he apparently has lost that motivation after an injury which did not serve to disable him for a continuous period of not less than 12 months.

agencies, the testimony of these witnesses having been given at an earlier hearing before the Workmen's Compensation Commission of Maryland. Dr. Caguin had testified, in part, that in his opinion Kyle was permanently fifty per cent disabled in his body as a whole, that Kyle could not go back to his previous work at heavy labor, and that he did not know of any gainful work that Kyle could do. Mrs. Gerber had testified that she interviewed Kyle on two occasions and concluded that he was not capable of gainful employment by her standards or those of her clients.

The opinion evidence unfavorable to claimant consisted primarily of the testimony of Dr. Johnson, the expert medical witness called by the Hearing Examiner, and Mr. Julian Nadolsky, a vocational evaluator for the Baltimore League for Crippled Children and Adults, who appeared as the vocational expert for the Secretary. Dr. Johnson had never examined Kyle. He formed his opinions from an examination of the medical records and the testimony presented at the hearing. He concluded that claimant would have no substantial difficulty in performing "light to moderate work." Mr. Nadolsky did not interview Kyle and he did not test him for vocational aptitude. He testified on the basis of Kyle's background, vocational and medical histories, the testimony presented at the hearing, and a "survey" which he had conducted among several employers concerning job availability. It was his opinion that Kyle could "engage in light laboring occupations such as a porter, a janitor, or possibly, the signal man in the construction industry and possibly in a laundry as a sorter of laundry and folder."

Also in the administrative record were the additional reports of three other physicians who had examined Kyle and two who had not. Of these reports only one may be considered favorable to Kyle's claim.[3]

Kyle urged in brief and oral argument that the opinions of Dr. Johnson, who had never examined him, and Mr. Nadolsky, who had never interviewed him or tested him, cannot constitute substantial evidence to support a finding of nondisability when countered by the opinions of Dr. Caguin, the treating physician, and Mrs. Gerber who twice interviewed Kyle before concluding that he was unemployable. In support of this position, when submitting the case, Kyle relied heavily upon Cohen v. Perales, 412 F.2d 44 (5 Cir. 1969), which held that the testimony of a nonexamining expert medical witness cannot serve to corroborate the hearsay reports of absent doctors, and that mere uncorroborated hearsay cannot constitute substantial evidence to support an examiner's decision adverse to the claimant. Denying the Secretary's petition for a rehearing and petition for rehearing en banc, the *Perales* court made it clear, however, that its decision applied only "if the claimant objects to the hearsay evidence and *if the hearsay evidence is directly contradicted by the testimony of live medical witnesses* and by the claimant who testify in person before the examiner * * *." Cohen v. Perales, 416 F.2d 1250, 1251 (5 Cir. 1969). (Emphasis added.)

Kyle called our attention also to a prior decision of this court, Hayes v. Gardner, 376 F.2d 517 (4 Cir. 1967), in which we reversed the Secretary's denial of disability benefits where the report

3. The introduction into evidence of the four "unfavorable" reports was objected to at the examiner's hearing by Kyle's attorney on the ground that the doctors were not subject to cross-examination, and in two instances on the additional ground that the doctors had not examined Kyle. Kyle's attorney also objected to the testimony of Dr. Johnson because he had never examined Kyle, and to that of Mr. Nadolsky, because he had never interviewed or tested him. The qualifications of Mr. Nadolsky as a vocational expert were also challenged. The district court ruled that the examiner properly admitted these reports and testimonial evidence. We conclude that the points presented on this appeal are without merit as will hereinafter appear from the opinion.

of a treating physician indicated that the claimant was disabled and the only basis for the Secretary's decision was the opinion of the expert medical witness who did not examine the claimant. In that case, 376 F.2d at 520–521, we concluded that "[I]n view of *the opinion evidence as to the existence of a disability*, combined with the overwhelming medical facts, the uncontradicted subjective evidence, and claimant's vocational background, the opinion of a doctor who never examined or treated the claimant cannot serve as substantial evidence to support the Secretary's finding." (Emphasis added.)

After the instant case had been submitted on appeal a written opinion was prepared but we then deemed it advisable to await review of Cohen v. Perales [4] by the Supreme Court which had granted certiorari [5] to resolve the procedural due process issue presented in *Cohen, supra.* The case was decided by the Supreme Court, *sub nom.* Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

In Richardson v. Perales the Court explicitly approved HEW procedure whereby written reports of physicians are received in evidence, despite their hearsay character and the absence of an opportunity to cross-examine the reporting doctors. Moreover, the Court held that such written reports may constitute substantial evidence within § 205(g) of the Social Security Act [6] to support rejection of disability claims, notwithstanding the presence of directly opposing testimony by the claimant and direct medical testimony favorable to him.

In the instant case Kyle challenged the Hearing Examiner's acceptance of and reliance on the testimony of the HEW physician-consultant, Dr. Johnson, who had never examined claimant but instead based his evaluating opinion of claimant's physical condition on a review of the record, including the challenged physicians' reports. The district court in Perales v. Secretary of Health, Education and Welfare, 288 F.Supp. 313 (W.D.Tex.1968), and the Fifth Circuit in Cohen v. Perales, *supra*, criticized the practice of relying on such medical advisers. Any doubts one may have entertained concerning the use of these consultants were put to rest by the Court in Richardson v. Perales, *supra*,— " * * * we see nothing unconstitutional or improper in the medical adviser concept * * *." [7]

Furthermore, the Court, referring to the statutory phrase, "supported by substantial evidence," restated its longstanding pronouncement that "substantial evidence" means

" 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " [8]

Even though the vocational expert witness, Mr. Nadolsky, did not interview or test claimant, the Secretary was clearly entitled to consider his testimony. Indeed, in view of claimant's tendency to exaggerate the symptoms of his physical impairment [9] it is likely that Mr. Nadolsky was able to form a more reliable opinion concerning claimant's vocational capabilities than was the witness Mrs. Gerber, as her opinion was formed at least partially from what Kyle told her during two interviews.

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *.

4. 412 F.2d 44 (5 Cir. 1969) ; rehearing denied with explanatory comment, 416 F.2d 1250 (5 Cir. 1969).

5. Cert. granted *sub nom.* Finch, Secretary of Health Education and Welfare v. Perales, 397 U.S. 1035, 90 S.Ct. 1365, 25 L.Ed.2d 646 (1970).

6. 42 U.S.C. § 405(g), relating to judicial review, states:

7. 402 U.S. 389, at 408, 91 S.Ct. 1420, at 1431.

8. 402 U.S. 389, at 401, 91 S.Ct. 1420, at 1427.

9. See footnote 2.

The Secretary's denial of disability benefits was found by the district court to be supported by substantial evidence and the court's refusal to disturb the Secretary's decision is approved.

Affirmed.