Eva E. DELK, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 72–527.

United States District Court, D. South Carolina, Charleston Division.

Oct. 19, 1973.

———o———

Hugo M. Spitz, Charleston, S. C., for plaintiff.

John K. Grisso, U. S. Atty., Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This is a suit by Eva E. Delk, hereinafter referred to as the plaintiff, against the defendant Secretary of Health, Education, and Welfare under § 1869(b) of the Social Security Act (hereinafter referred to as "the Act", 42 U.S.C. § 1395ff(b), to review a final decision of the Secretary denying the payment of benefits for services provided to the plaintiff, as an in-patient at Roper Hospital, Charleston, South Carolina, during the period March 25, 1970, until May 29, 1970.

Section 1869(b) of the Act provides that judicial review shall be to the same extent as provided in § 205(g) of the Act, 42 U.S.C. § 405(g). Section 205(g) provides, *inter alia*, that "[a]s part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based," and that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." It also provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

█ Thus the only issue before this court is whether or not the findings of the Secretary are supported by substantial evidence, and if they are the findings of the Secretary must be accepted. This court may not try the case *de novo* and substitute its findings for those of the Secretary. Flack v. Cohen, 413 F.2d 278 (4th Cir. 1969). However, this does not mean that the findings of the administrative agency must be blindly accepted. On the contrary, the statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action. A critical and searching examination of the record is required, and the Secretary's decision may be set aside when necessary to insure a result consistent with congressional intent and elemental fairness. *Flack,* supra, at 279–280. See also Thomas v. Celebrezze, 331 F.2d 541, at 543 (4th Cir. 1964). As was stated by Judge McAllister in a recent Sixth Circuit opinion, and quoted with approval in Garrett v. Richardson, 471 F.2d 598 (8th Cir. 1972):

It used to be easy enough for an appellate court to affirm an administrative agency on the ground that the findings were supported 'by substantial evidence', if it could find just a trace of evidence to support them. But that is not the case anymore. Congress grew critical of such affirmances and, in turn, brought about harsh criticism of the courts for such decisions on the ground that cases were affirmed merely because the appellate court could find evidence in the record which, viewed in isolation, substantiated a Board's findings. Floyd v. Finch, 441 F.2d 73, 76 (6th Cir. 1971).

Substantial evidence has been defined by the Supreme Court as:

more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). See also Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971).

As was stated in Dyer v. Richardson, 347 F.Supp. 478 (E.D.Tenn.1972), quoting Consolo v. Federal Maritime Commission, 383 U.S. 607, 619–620 (1966):

It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *Id.,* at 481.

█ It is now clearly settled that written medical reports by a licensed physician who has examined the claimant may constitute "substantial evidence" in social security cases, despite their hearsay character. *Perales,* supra,

402 U.S., at 402, 93 S.Ct., at 1427, 28 L. Ed.2d, at 853.

### Applicable Provisions of Law

As pertinent hereto section 1812 of the Act, 42 U.S.C. 1395d, sets out the scope of hospital benefits as follows:

"(a) The benefits provided to an individual by the insurance program under this part shall consist of entitlement to have payment made on his behalf * * * for—

"(1) inpatient hospital services for up to 150 days during any spell of illness minus 1 day for each day of inpatient hospital services in excess of 90 received during any preceding spell of illness (if such individual was entitled to have payment for such services made under this part unless he specifies in accordance with regulations of the Secretary that he does not desire to have such payment made) * * *."

The conditions and limitations on payment for services are set out in section 1814 of the Act, 42 U.S.C. 1395f. In pertinent part this provides:

"(a) *Except as provided in subsection (d) of this section,* payment for services furnished an individual may be made only to providers of services which are eligible therefore under section 1395cc * * *

\* \* \* \* \* \*

"(d)(2) *Payment may be made on the basis of an itemized bill to an individual entitled to hospital insurance benefits under section 426 of this title for services* described in paragraph (1) *which are emergency services* if (A) payment cannot be made under paragraph (1) solely because the hospital does not elect to claim such payment, and (B) such individual files application (submitted within such time and in such form and manner and by such person, and containing and supported by such information as the Secretary shall by regulations prescribe) for reimbursement. (Emphasis supplied.)

As applicable to the instant case, section 405.152 of Social Security Regulations No. 5 (20 C.F.R. 405.152) provides in pertinent part:

"(b) For purposes of the hospital insurance benefits program, 'emergency services' are those inpatient hospital services * * * which are necessary to prevent the death or serious impairment of the health of the individual, and which, because of the threat to the life or health of the individual, necessitate the use of the most accessible hospital (see § 405.192) available and equipped to furnish such services."

Section 405.192 of Social Security Regulations No. 5 (20 C.F.R. 405.192) further provides as follows:

"*Emergency Services; Finding of Accessibility.*—(a) *General.*—Services, to be emergency services (as defined in § 405.152(b)), must be furnished by the most accessible hospital available and equipped to furnish such services.

"(b) *Objectives.*—The objective of the requirement in paragraph (a) of this section is *to limit reimbursement for emergency inpatient hospital services provided by nonparticipating hospitals to situations where transport of the patient to a participating hospital would have been medically inadvisable,* e. g., the participating hospital would have taken longer to reach and the patient's condition necessitated immediate admission for hospital services; and for so long as that condition precluded the patient's discharge or removal to a participating hospital.

"(1) In emergency situations, time is a crucial factor and the patient must ordinarily receive hospital care as soon as possible. Under such circumstances, all factors must be considered which bear on whether or not the required care could be provided sooner in the nonparticipating hospital than in a participating hospital in the general area. *The determination must take account of such matters as relative distances of the participating and nonparticipating hospitals,* the transportation facilities available to these

hospitals, the quality of the roads to each hospital, the availability of beds at each hospital, and any other relevant factors. All of these factors are pertinent to a determination of whether a hospital is 'the nearest,' or 'further away,' or 'closer to' the place where the emergency occurred.

"(2) The considerations referred to in subparagraph (1) of this paragraph are generally applicable to rural areas, where hospitals are likely to be spaced far apart. *In urban and suburban areas, where both participating and nonparticipating hospitals are similarly available, it will be presumed that the services could have been provided in a participating hospital.* This presumption can be overcome only by clear and convincing evidence showing the medical or practical necessity in each individual case for taking the patient to a nonparticipating hospital instead of a similarly available participating hospital.

"(3) There are some situations requiring prompt removal of a patient to a hospital but in which there was no immediate need, of the kind described in subparagraph (1) of this paragraph, to rush the patient to a hospital, i. e., his condition, while requiring prompt attention in a hospital, indicated there was some time available to get him to one. In such cases *the services provided in a nonparticipating hospital are not covered as emergency inpatient hospital services if there was a participating hospital in the same general area* but further away from the place where the emergency occurred, provided that professional judgment confirms that the additional time required to take the patient to the participating hospital would not have been hazardous to the patient.

"(4) The determination whether the nonparticipating hospital which claims reimbursement is the most 'accessible' hospital will be made on the basis of the considerations set forth in paragraph (c) and (d) of this section; interpreted in accordance with the statement of objectives in this paragraph (b). The personal preference of a patient, or of his physician, or of members of his family, or others, in the selection of a hospital, will not be considered a factor in determining whether services were furnished by the most accessible hospital. Nor will the nonavailability of staff privileges to the attending physician in a participating hospital which is available and most accessible to the patient, or the location of previous medical records, be considered a factor in the determination of accessibility.

"(c) *Conditions Under Which the Accessibility Requirement Will Be Met.* —Where an individual must be taken to a hospital immediately for required diagnosis or medical treatment, the accessibility requirement will be met, except as provided in paragraph (d) of this section, if it is established to the satisfaction of the Administration that:

"(1) The nonparticipating hospital which furnished the emergency services is the nearest hospital to the point at which the emergency occurred (subject to the presumption contained in paragraph (b)(2) of this section); and, if there is a similarly available participating hospital, the evidence shows the medical or practical necessity for taking the patient to a nonparticipating hospital; or

"(2) One or both of the following reasons apply:

"(i) No closer participating hospital has a bed available or will accept the individual; or

"(ii) The nonparticipating hospital is the nearest one equipped medically to deal with the type of emergency involved; or it is the nearest hospital which is equipped to handle the emergency which had a bed available when the emergency occurred.

"(d) *Conditions Under Which the Accessibility Requirement Will Not Be*

*Met.*—The accessibility requirement will not be met if:

"(1)(i) The diagnosis in the emergency claim or other evidence indicates there was some time for getting the individual to a hospital, and no immediate need to rush him to one; and

"(ii) *There is a participating hospital in the area which is further away from the point at which the emergency occurred than the nonparticipating hospital, but is equipped to handle such an emergency;* and

"(iii) The additional time it would have required to take the individual to the participating hospital would not have been hazardous to the patient; or

"(2) *There is a participating hospital, equipped to handle the emergency with a bed available, closer to where the emergency occurred than the nonparticipating hospital in which the beneficiary received emergency services;* and neither of the reasons described in paragraph (c)(2) of this section apply." (Emphasis supplied.)

## ISSUE

The issue in this case is whether the administrative record contains substantial evidence to support the decision of the Secretary denying plaintiff reimbursement for costs of care received at the Roper Hospital during the period March 25, 1970 through May 29, 1970.

The plaintiff is a 67-year-old white woman who was seriously injured in an automobile accident on March 18, 1970, in Union Point, Georgia. She and her husband, Earl M., who was also injured in the same accident, were taken to a hospital in Greensboro, Georgia. Mr. Delk, who was not injured as badly as his wife, was treated there while the plaintiff was transferred later that day by ambulance to the intensive care unit of St. Mary's Hospital in Athens, Georgia. She remained in that unit seven days for treatment by four or five bone specialists for a broken lower left arm, the fracture of which pierced the skin, a broken lower right arm, and a broken lower right leg. This elderly woman also suffered a crushed nose, crushed cheek bones, a broken jaw, and all her teeth were knocked out, thus leaving her face "flat like a plate." On the seventh day after the accident, her husband, having already been released from the Greensboro hospital, inquired of his wife's attending physician, Dr. B. L. Freeman, Jr., where the plaintiff could be treated for the multiple facial fractures, which to this time had been left unattended because of a lack of adequate services at St. Mary's. He was informed that "the nearest place that this [medical service] was available was Charleston, South Carolina." Acting on the physician's knowledge of regional medical facilities, the plaintiff's husband contacted several of the Charleston hospitals.

There are four participating hospitals which provide services in the Part A Medicare program of Title XVIII of the Social Security Act. They are the St. Francis Xavier Hospital, Charleston County Hospital, McClennan-Banks Hospital, and the Charleston Medical College Hospital. There are two nonparticipating hospitals: the Roper Hospital and the Baker Hospital. The record does not establish whether either of the nonparticipating hospitals entered into an agreement with the Secretary of Health, Education, and Welfare relating to the furnishing of emergency services pursuant to § 1814(d)(1) of the Act, 42 U.S. C. 1395f(d)(1).

The plaintiff's husband first contacted St. Francis Xavier Hospital, one of the participating hospitals, and was advised that it would be three weeks before the plaintiff could be admitted. He then contacted the Baker Hospital, a nonparticipating hospital, and the McClennan-Banks Hospital, another participating hospital. Both advised him that they did not provide the necessary services. The plaintiff's husband was finally able to make arrangements with Roper Hospital, a nonparticipating hospital, for

plaintiff's immediate admission. No inquiry was made to the two other participating hospitals, Charleston County Hospital and Charleston Medical College Hospital.

On or about 10 A.M. on March 25, 1970, the plaintiff was taken by ambulance a distance of 220 miles to Roper Hospital in Charleston. Plaintiff was conscious but still in pain and unable to walk. The hospital took x-rays and made laboratory tests the next day, March 26, and the plaintiff was operated on, apparently, the next following morning, March 27. She remained in the hospital until May 29, 1970. It is the payment of benefits for these services provided to plaintiff at Roper Hospital that is the subject of this lawsuit.

After her release from the hospital the plaintiff applied for Medicare benefits to her local Social Security office. The records contain a copy of a Report of Contact dated September 18, 1970 and signed by a Social Security office representative, Ms. Lila R. Wiggin. The Report contains the following hearsay evidence:

> Contact was made with Charleston Co. Hosp. when claim was filed. Advised that on 03/25/70 four beds were available for plastic surgery. However, the physician would have to come from Medical College of Charleston, S. C. (teaching college hosp.). Contact—Mrs. Freeman at Charleston Co. Also advised if case was extreme patient would be transferred to Medical College . . . .

> There is really no means of verifying closest hospital to Athens, Ga. However, see stmt. by Dr. Freeman that Roper was nearest.

As a result of this investigation, Ms. Wiggin made the determination that although beds were available "in participating hospital(s) in the general area [p]articipating hospital would not accept beneficiary" because "[n]eeded equipment or personnel [was] unavailable in participating hospital. Unusual *medical circumstances*" (emphasis in original) existed so that although "[a]ccessibility is certainly questionable, however, in good conscience I believe that accessibility was met. ; . . ."

A month later, the local Social Security officer was reversed by the Regional Representative, Mr. Douglass M. Richard, who sent plaintiff a memorandum dated October 16, 1970, which stated:

> The clinical evidence does not establish absolute necessity for immediate hospitalization in the nearest facility. It appears that the patient could have tolerated the delay and stress imposed as a result of admitting procedures and transportation to the nearest appropriate participating facility with an available bed. Necessity for eventual hospitalization could have been predicted early in the course of the patient's illness before the condition had progressed to a more critical stage, and arrangements should have been made at the outset to secure a bed in a participating facility.

Plaintiff thereafter requested a hearing and such a hearing was held on November 11, 1971, before Mr. D. F. Billett, a Hearing Examiner. The entire proceeding lasted 25 minutes.

At the outset, the Hearing Examiner noted that the plaintiff appeared without benefit of counsel to which the plaintiff replied:

> We don't need a lawyer. We will just tell the truth. A Christian doesn't need a lawyer I don't think.

After this statement, the Hearing Examiner proceeded to admit eight exhibits proffered by the Social Security office, containing a wealth of pure hearsay evidence, to which the plaintiff did not object, being without the benefit of counsel. After the plaintiff and her husband testified, the hearing was closed.

On January 25, 1972, the Hearing Examiner rendered a favorable decision to the plaintiff, reversing the Regional Representative in a five page opinion.

The pertinent part of his decision reads as follows:

> The only evidence of any availability at a participating hospital was the report of contact by an employee of the State Agency which showed there were four beds available at Charleston County Hospital but that the surgeon who performed the plastic surgery would have to come from the Medical College. There is no evidence that there were any beds available at the Medical College.
>
>     \*    \*    \*    \*    \*    \*
>
> In this particular instance, in order to be admitted to Charleston County Hospital, the claimant would be forced to give up her right to determine which surgeon performed the surgery on her unless the surgeon happened to be on the staff of the Medical College.
>
> In view of this, the hearing examiner is of the opinion that the accessibility test has been met in this instance and Roper Hospital was the most accessible hospital available *and* equipped to furnish such services. (Emphasis added.)
>
>     \*    \*    \*    \*    \*    \*
>
> The services required by the claimant were emergency services necessary to prevent death or serious impairment of health which necessitated the use of the most accessible hospital available, even though the claimant's condition was not such an emergency that she could not have been transferred safely to a participating hospital.

On March 3, 1972, the plaintiff was notified that the Appeals Council in the Bureau of Hearings and Appeals of the Social Security Administration, on its own motion, had decided to review the hearing examiner's decision. Plaintiff was told of her right to have counsel, or herself appear in person, for an oral argument in Arlington, Virginia. She replied in a hand-scrawled message on the second page of the notice:

> We are both physically unable to attend a meeting there [Arlington, Virginia], as we are unable to travel after our wreck. We have tried to be honest and fair. You have had all of the Drs. statements, also your examiner, Mr. D. A. [sic] Billett [address omitted]. We are both unable to work and Social Sec. is hard to live on. Sincerely, Mrs. Eva E. Delk.

On April 21, 1972, the Appeals Council reversed the hearing examiner, in a six-page opinion. The Appeals Council said:

> The Appeals Council has carefully considered the evidence in this case and finds that there is no indication that any immediate, specific or intensive procedures were ordered or administered to the claimant upon admission to the hospital. The record does not depict the presence of an acute emergency situation, nor is the evidence persuasive that, as of the time of the claimant's admission on March 25, 1970, immediate hospitalization in the most accessible hospital available "was necessary to prevent the death or serious impairment to the health" of the claimant. On the contrary, the evidence shows that the plastic surgery was not performed until 2 days after her admission to the Roper Hospital. The record does not indicate any medical basis for a conclusion that the claimant had to be transferred to a hospital in Charleston, South Carolina, which is located about 220 miles from Athens, Georgia, and that she could not have gone to a participating hospital in Atlanta, Georgia, which is located about 60 miles from Athens, Georgia. Neither the personal preference of the claimant's physician in the selection of a hospital, nor the nonavailability of staff privileges to the claimant's physician in a participating hospital which is available to the patient, is relevant in determining whether services were furnished by the most accessible hospital. Furthermore, the evidence establishes that Charleston County Hospital, a fully participating hospital in the Medicare program dur-

ing the pertinent period is located in the same community as the Roper Hospital and was at least as accessible to the claimant. Moreover, there were four beds available for plastic surgery, during the period herein, at the Charleston County Hospital.

On July 7, 1972, the plaintiff, through hired counsel, filed this suit with this court to review the record of the final decision of the Secretary of H.E.W., as expressed in the opinion of the Appeals Council. In support of its complaint, plaintiff's lawyer filed a three-page brief urging reversal, noting to, but not quoting, the applicable Social Security Regulation, to wit, 20 C.F.R. 405.152, without citing a single case in support of its position, and otherwise appealing to the sympathy of the court. On November 21, 1972, counsel for the defendant Secretary moved for summary judgment and filed a lengthy brief setting forth a statement of the facts, the administrative proceedings, the applicable provisions of law, and an argument in favor of its position with detailed citation of case law. The court expresses its appreciation to defendant's counsel for its efforts in easing the research burden of the court and also expresses its apologies to both counsel for its delay of almost an entire year in ruling on this motion, a delay which has been occasioned by other more extensive litigation that has caused an inadvertent neglect of this one particular case.

■ To recapitulate on the basis of the facts stated above, the issue here is whether this court can find that the Appeals Council's finding that the inpatient hospital services rendered to the plaintiff at Roper Hospital, Charleston, South Carolina, during March 25 through May 29, 1970, was not "emergency services" within the meaning of 20 C.F.R. 405.152 is supported by substantial evidence. The Appeals Council's finding is basically made up of two parts: first, that there was no emergency necessary to prevent death or serious impairment of the health of the plain-

tiff; second, that, in any event, the nonparticipating hospital used was not the most accessible hospital available and equipped to furnish such services because two other participating hospitals were also available to furnish the required services. These findings are not supported by substantial evidence and therefore must be reversed. They are supported only by surmise and conjecture. The findings are against the substantial weight of evidence pointing to a contrary result.

As to the first part of the Appeals Council's finding, it is true that there was no emergency necessary to prevent "death" but there was an emergency necessary to prevent "serious impairment of the health of the individual" plaintiff. 20 C.F.R. 405.152(b). The plaintiff had been just taken, after seven days in the intensive care unit of one hospital, by ambulance, on a stretcher and in pain to another hospital for treatment of the remaining injuries she received in the auto accident. It is not necessary that there be an "acute emergency situation" as expressed by the Appeals Council, only that the medical services rendered be part of the same res gestae of treatment following the accident. The Appeals Council appears to have relied heavily on the fact that the plaintiff's transfer did not take place until seven days after the accident and that the services in dispute here were not rendered until two days later.

The Appeals Council's reliance on the time factor alone is an insufficient basis for a judgment. All the circumstances surrounding the treatment following the accident must be considered. The Appeals Council fails to consider the fact that the accident victim was 67 years old and, apparently quite incapable of surviving the ordeal of all the necessary medical attention at once. It was enough of a strain that for seven days immediately after the accident she was in the intensive care unit of one hospital for treatment of a broken leg and two broken arms, one being a fracture piercing the skin. Since the hospital that

rendered this initial treatment could not perform the necessary extensive corrective surgery to the plaintiff's face in order to enable her to eat, drink, and talk again, thus, an emergency situation still existed.

It was necessary that surgery be performed soon elsewhere, before the broken face bones of this elderly woman began to knit together into a mass in order to avoid the physician's rebreaking and setting the bones later. Apparently, the hospital would need at least 36 hours to take x-rays, make lab tests, and plan an attack to correct this massive injury. Thus, the so-called two-day delay after the plaintiff's entry into the hospital for plastic surgery was not casually motivated. Therefore, the Appeals Council's decision, based on the time element alone that an emergency did not exist because no "immediate, specific or intensive procedures were ordered or administered" is not supported by any evidence, let alone substantial evidence, and consequently must fall.

As to the second part of the Appeals Council's findings, the plaintiff has the burden of proof of overcoming the presumption that "where both participating and nonparticipating hospitals are similarly available, . . . services could have been provided in a participating hospital." 20 C.F.R. 405.192(b)(2). "This presumption can be overcome only by clear and convincing evidence . . . ." Id. The Appeals Council found that the burden was not carried. It is clear to this court that the burden was carried and that the Appeal Council's finding to the contrary is not supported by substantial evidence.

In order to carry the burden of proof the plaintiff had to prove: first, that Charleston, South Carolina, was the closest place to the scene of the accident in Union Point, Georgia, that could provide the necessary services; and second, that in Charleston itself, none of the participating hospitals could immediately provide these services so that use of the nonparticipating hospital was warranted.

To carry the first part of the burden of proof, plaintiff offered into evidence the attending physician's statement that Charleston was the closest place to the scene of the accident that could provide the necessary treatment. There is also the Report of Contact made by Ms. Wiggin, the local Social Security office representative, that "there is really no means of verifying closest hospital to Athens, Georgia. However, see stmt. by Dr. . . . ." The Appeals Council discounted this evidence, stating that "[t]he record does not indicate any medical basis for the conclusion that the claimant had to be transferred to a hospital in Charleston, South Carolina, which is located about 220 miles from Athens, Georgia, and that she could not have gone to a participating hospital in Atlanta, Georgia, which is located about 60 miles from Athens, Georgia." This conclusion is merely conjecture as to Atlanta, contrary to the only direct evidence on the point as to Charleston, and therefore clearly erroneous and not supported by any evidence, let alone substantial evidence.

To carry the second part of the burden of proof, the plaintiff had to show that none of the four participating hospitals in the Charleston area could provide the necessary services. Two of these hospitals, St. Francis Xavier and McClennan-Banks, were contacted by the plaintiff's husband who was told that there were no available beds. The Appeals Council does not dispute the truthfulness of this statement.

The Appeals Council found that the plaintiff failed to carry this part of her burden of proof because there is certain pure hearsay evidence in the Report of Contact by Ms. Wiggin, the local Social Security representative, that in the third participating hospital, Charleston County Hospital, "on 03/25/70 four beds were available." On this basis alone, the Appeals Council decided that "the required services could have been fur-

nished by the participating hospital." This finding is also clearly erroneous and not supported by substantial evidence for the following reasons. It is provided in 20 C.F.R. 405.152(b) that factors in the consideration of the most accessible hospital are whether the hospital is "available *and* equipped to furnish such services." (Emphasis added.) The Appeals Council correctly found that the Charleston County Hospital was "available" but the decision neglects any consideration of the second requirement as to whether the Charleston County Hospital was "equipped to furnish such services." The court construes this regulation to use the term "services" to include both physical facilities and medical personnel. The only evidence on the point indicates that Charleston County Hospital was not so equipped. Although there is no direct evidence as to the physical plant of the hospital, there is evidence that there were no staff members that could provide the necessary medical treatment. The Report of Contact by Ms. Wiggin stated that "the physician would have to come from Medical College." Obviously, a hospital cannot be equipped to furnish services within the meaning of the regulation if it does not have the medical personnel on hand but must borrow them from another hospital.

Finally, as to the fourth participating hospital, Medical College Hospital, there is no evidence as to whether this participating hospital was "available and equipped to furnish such services." Nevertheless, this hospital must be considered to determine whether the plaintiff has carried her burden of proof that none of the participating hospitals in Charleston could provide the necessary services. It is interesting to note that neither Ms. Wiggin, the local Social Security representative, nor Mr. Billett, the hearing examiner, apparently all South Carolinians, dealt with the accessibility of this hospital in their individual deliberations. Perhaps this lack of attention was the result of their familiarity with the local hospital. The court also notes that the Appeals Council, in Arlington, Virginia, with members who are most likely not familiar with this local hospital, also failed to consider such hospital in its deliberation. Their neglect was probably inadvertent. Nevertheless, this judge, being a life-long resident of the area, believes that it is proper for this court to take judicial notice of the widely and locally known fact that the Medical College Hospital here in Charleston, takes only patients on a selective basis in order to utilize their particular ailments in the education of medical students. This hospital does not take all comers. The chances of a patient being treated, for a reasonably low price at a slightly higher risk, depends on the fortuitous incidence of the applicant having an ailment desired to be utilized by the Medical College Hospital at the time of application. Because of the remote likelihood of the plaintiff being accepted, this court finds that it was proper that the Medical College Hospital, as a participating hospital, be ignored in the consideration of this case.

Since plaintiff has carried her burden of proof that none of the four participating hospitals in the Charleston area could have performed the required services at the necessary time, the plaintiff was justified in having the emergency services performed at one of the nonparticipating hospitals, in this case, Roper Hospital.

Therefore, this court reverses the Appeals Council because its decision is not supported by substantial evidence. Plaintiff met the conditions of the accessibility requirement under 20 C.F.R. 405.192(c)(1), (c)(2)(i), and (c)(2)(ii), supra, and therefore is entitled to judgment in her favor.

And it is so ordered.